# EXHIBIT 1

Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

**STATE OF MINNESOTA**

**COUNTY OF HENNEPIN**

**DISTRICT COURT**

**FOURTH JUDICIAL DISTRICT**

Case Type: 3B - Other Contracts
Court File No.:

| | |
|---|---|
| The Sherwin-Williams Company, as successor to The Valspar Corporation, Plaintiff, v. Beazley Insurance Company, Inc., Defendant. | **Civil Cover Sheet** **(Non-Family Case Type)** Minn. R. Gen. Prac. 104 |

Date Case Filed: September 27, 2018

This civil cover sheet must be filed by the initial filing lawyer or party, if unrepresented by legal counsel, unless the court orders all parties or their legal counsel to complete this form.  Once the initial civil cover sheet is filed, opposing lawyers or unrepresented parties who have not already been ordered to complete this form may submit their own cover sheet within ten days after being served with the initial cover sheet. See  Rule 104 of the General Rules of Practice for the District Courts.

**If information is not known to the filing party at the time of filing, it shall be provided to the Court Administrator in writing by the filing party within seven (7) days of learning the information.**  Any party impleading additional parties shall provide the same information to the Court Administrator.  The Court Administrator shall, upon receipt of the completed certificate, notify all parties or their lawyers, if represented by counsel, of the date of filing the action and the file number assigned.

ATTORNEY FOR PLAINTIFF

INC.

Christopher L. Lynch
Attorney Name

Barnes & Thornburg LLP
225 South Sixth Street, Suite 2800
Postal Address

Minneapolis, MN 55402-4662
City                    State          Zip Code

 (612) 367-8768
Telephone Number

clynch@btlaw.com
E-mail address

0284154
Minnesota Attorney License No.

DEFENDANT
BEAZLEY    INSURANCE    COMPANY.,

Unknown
Attorney Name

30 Batterson Park Rd.
*Defendant's* Postal Address

Farmington, CT 06032
City                    State          Zip Code

 Unknown
*Defendants's* Telephone Number

 Unknown
E-mail address

N/A
Minnesota Attorney License No.

1.   Provide a concise statement of the case including facts and legal basis:

Defendant issued a "Crime Insurance Policy" to Plaintiff in 2016.  In or about April 2017, Plaintiff discovered that one of its now-former employees had been participating in a scheme to overcharge Plaintiff for powder coatings supplied by one of its suppliers, and that as a result of the scheme, Plaintiff had paid approximately $3,500,000 in wrongful overcharges that it cannot recover.  This theft is covered under the "Employee Dishonesty" coverage provided by the Defendant's Crime Insurance Policy.  However, Defendant has wrongfully denied its obligation to cover this theft, and has breached its policy.  Plaintiff seeks, among other things, a declaration that the theft is covered under the Defendant's Crime Insurance Policy and that Defendant has breached that policy, a declaration that Defendant is obligated to pay all loss suffered by Plaintiff as a result of the theft in excess of the policy deductible, payment of damages in excess of $50,000 for Defendant's breach of its Crime Insurance Policy, costs of suit, attorney and expert fees and expenses, interest, all other further relief that the Court deems just, appropriate, necessary, or proper.

2.   Date Complaint was served: October 1, 2018

3.   For Expedited Litigation Track (ELT) Pilot Courts only:

a.  ☐ the parties jointly and voluntarily agree that this case shall be governed by the Special Rules for ELT Pilot. Date of agreement: _____

b.  **X** The court is requested to consider excluding this case from ELT for the following reasons:  ___Plaintiff believes that the likely necessity for expert/forensic analysis and testimony do not make this case a candidate for ELT_____

_____

Note:  ELT is mandatory in certain cases, and where mandatory, exclusion may also be sought by timely motion under the Special Rules for ELT Pilot.

c.  Anticipated number of trial witnesses: _____6-8_____
d.  Amount of medical expenses to date: _____N/A_____
e.  Amount of lost wages to date: _____N/A_____
f.  Identify any known subrogation interests: _____None____ _____

4.  Estimated (non-expert) discovery completion within_6_ months from the date of this form.

5.  Disclosure / discovery of electronically stored information discussed with other party?

X  No   ☐  Yes, date of discussion: _____
If Yes, list agreements, plans, and disputes: _____

6.  Proposed trial start date: __October 1, 2019_____

7.  Estimated trial time: _3_____days_____ (estimates less than a day must be stated in hours).

8.  Jury trial is:

☐  waived by consent of _____ pursuant to Minn. R. Civ. P. 38.02.
(specify party)

**X** requested by _____Plaintiff_____ (NOTE: Applicable fee must be enclosed)
(specify party)

9.  Physical/mental/blood examination pursuant to Minn. R. Civ. P. 35 is requested:

☐ Yes      X No

10.  Identify any party or witness who will require interpreter services, and describe the services needed (specifying language, and if known, particular dialect): ___N/A_____

_____

11.  Issues in dispute:

At this time, Plaintiff does not know what, if any, of the allegations in Plaintiff's Complaint may be disputed by Defendant or what, if any, defenses Defendant may assert in response to Plaintiff's claim.

12.    Case Type / Category: <u>3B - Other Contracts</u>  (NOTE:  select case type from Form 23, Subject Matter Index for Civil Cases, appended to the Minnesota Rules of Civil Procedure).

13.    Recommended Alternative Dispute Resolution (ADR) mechanism: <u>Mediation</u>
       (See list of ADR processes set forth in Minn. Gen. R. Prac. 114.02(a))
       Recommended ADR provider (known as a "neutral"): <u>To be determined</u>
       Recommended ADR completion date: _____
       If applicable, reasons why ADR not appropriate for this case: _____
       _____


By signing below, the attorney or party submitting this form certifies that the above information is true and correct.

Submitted by:  <u>/s/ Christopher L. Lynch</u>
Attorney License:  <u>0284154</u>
Firm:  <u>Barnes & Thornburg LLP</u>
Address:  <u>225 South Sixth Street, Suite 2800, Minneapolis, MN, 55402-4662</u>
Telephone:  <u>(612) 367-8768</u>
Date:  <u>October 2, 2018</u>

ADDITIONAL ATTORNEY FOR PLAINTIFF

Andrew J. Detherage
Attorney Name

11 South Meridian Street
Postal Address

Indianapolis, IN 46204
City     State          Zip Code

(317) 231-7717
Telephone Number

Andrew.detherage@btlaw.com
E-mail address

*Pro hac vice* motion to be filed
Minnesota Attorney License No.

ADDITIONAL ATTORNEY FOR PLAINTIFF

John P. Fischer
Attorney Name

11 South Meridian Street
Postal Address

Indianapolis, IN 46204
City     State          Zip Code

(317) 231-7355
Telephone Number

John.fischer@btlaw.com
E-mail address

*Pro hac vice* motion to be filed
Minnesota Attorney License No.

**STATE OF MINNESOTA**

**COUNTY OF HENNEPIN**

**DISTRICT COURT**

**FOURTH JUDICIAL DISTRICT**

Case Type: 3B - Other Contracts
Court File No.:

---

The Sherwin-Williams Company, as
successor to The Valspar Corporation,

            Plaintiff,

v.

Beazley Insurance Company, Inc.,

            Defendant.

**COMPLAINT**

**(Jury Trial Demanded)**

---

Plaintiff The Sherwin-Williams Company, as successor to The Valspar Corporation ("Valspar"), for its Complaint against Beazley Insurance Company, Inc. ("Beazley"), states and alleges as follows:

## PARTIES

1.     At all times relevant to the allegations in this Complaint, Valspar maintained its principal place of business in Minneapolis, Minnesota. Valspar continues to maintain substantial business operations in Minnesota.

2.     Beazley is, and at all times relevant to this complaint was, a corporation authorized by the State of Minnesota to do business within the State of Minnesota as an insurer.

## JURISDICTION AND VENUE

3.     This Court has personal jurisdiction over Beazley pursuant to Minn. Stat. § 543.19, as Beazley either transacts business within the state, committed an act within the state

that caused injury and damage to Valspar, and/or committed acts outside of the state that caused injury and damage to Valspar in the state.

4.      This Court has subject matter jurisdiction of this action pursuant to Minn. Const., Art. VI, §3 and Minn. Stat. § 484.01.

5.      Venue in Hennepin County is proper under Minn. Stat. § 542.09, because the causes of action alleged herein arose, in whole or in part, in this county.

## FACTUAL BACKGROUND

### A.      The Beazley Policy

6.      For the policy period from April 20, 2016 to April 20, 2017, Beazley issued a "Crime Insurance Policy" to Valspar (the "Beazley Policy").  A true and correct copy of the Beazley Policy is attached as Exhibit 1.

7.      Among other coverages, the Beazley Policy provided coverage to Valspar for "Employee Dishonesty": "The Insurer shall indemnify the Insured . . . for loss of . . . Money, Securities or Property resulting directly from Employee Theft . . . ."

8.      "Employee Theft" is defined in the Beazley Policy as: "the unlawful taking of Money, Securities or Property to the deprivation of an Insured by an Employee, whether identified or not, acting alone or in collusion with others."

### B.      The Employee Theft at Issue, and Beazley's Improper Denial of Coverage

9.      Beginning in approximately 2008, Valspar, through its wholly owned subsidiary, Valspar Sourcing, Inc., engaged AmeriCoats, an Illinois corporation, to provide toll manufacturing services.  A "toll manufacturer" is commonly understood in the industry to mean a company hired by a customer to supply a subset of manufacturing processes on the customer's behalf, using materials and specifications provided by the customer.    Under this toll

manufacturing arrangement, AmeriCoats manufactured and supplied powder coatings for purchase by Valspar, using Valspar's raw materials and specifications.

10.     From approximately February 2013 until approximately April 2017, the former Valspar employee responsible for managing Valspar's business relationship with AmeriCoats was Charles Cunningham.  In that role, Cunningham had the authority to authorize payments to AmeriCoats.   Though Cunningham no longer is employed by Valspar as of this filing, Cunningham was a Valspar employee at all relevant times.

11.     In about April 2017, Valspar received an anonymous message alleging irregularities in Cunningham's relationship with AmeriCoats.

12.     Facts that Valspar discovered regarding the irregularities and provided to Beazley included that Cunningham colluded with an unknown employee or employees of AmeriCoats to overcharge Valspar for the powder coatings supplied by AmeriCoats, and to share in the proceeds of this overcharging scheme.  Valspar based this conclusion on the following findings, among others:

> (a)     discovery of more than 2,000 AmeriCoats invoices that included approximately $3,500,000 in cumulative overcharges for the cost of raw materials, processing fees, or both, but that nonetheless were approved for payment in full by, or at the direction of, Cunningham; and
>
> (b)     Cunningham's receipt of certain benefits from an unknown AmeriCoats employee or employees, including paid travel, golfing, and payments to Cunningham through a company he incorporated for alleged "consulting" services, which benefits Valspar believes were provided as a reward for his participation in the overcharging scheme.

13.     Based on Cunningham's knowledge, experience, and training, he could not have inadvertently or unknowingly approved of invoices that regularly included overcharges; instead, he had to have known about the overcharges, and approved them anyway.

14.     Valspar has not recovered any of the approximately $3,500,000 it unknowingly paid in overcharges to date.

15.     The overcharging scheme uncovered by Valspar's investigation and described above constitutes an "Employee Theft Claim."

16.     The Employee Theft Claim is covered under the "Employee Dishonesty" coverage in the Beazley Policy.   Cunningham's participation in the overcharging scheme constitutes "Employee Theft" as defined in the Beazley Policy, because it is an "unlawful taking of Money . . . to the deprivation of an Insured by an Employee, whether . . . acting alone or in collusion with others."   Accordingly, Valspar is entitled to coverage from Beazley under the "Employee Dishonesty" coverage part in the Beazley Policy, because the "loss of . . . Money" Valspar suffered "result[ed] directly" from this "Employee Theft."   No exclusion, condition, limitation, or other provision precludes coverage for the Employee Theft Claim under the Beazley Policy.

17.     Valspar notified Beazley of the Employee Theft Claim promptly after discovering the overcharging scheme, via an email dated April 21, 2017.   Pursuant to the terms of the Beazley Policy, Valspar supported its claim for coverage through a sworn "Proof of Loss" statement dated October 31, 2017, which set forth facts establishing Valspar's right to coverage under the Beazley Policy.

18.     By letter dated December 19, 2017, Beazley wrongfully denied coverage for the Employee Theft Claim.   Valspar requested that Beazley reconsider its denial of coverage and accept its coverage obligations by letter dated February 14, 2018.   By letter dated April 11, 2018, Beazley confirmed its wrongful denial of coverage, and refused to fulfill its obligations under the Beazley Policy.

## COUNT I – DECLARATORY JUDGMENT

19.     Valspar repeats and realleges the preceding paragraphs of the Complaint as though fully set forth herein.

20.     Beazley has improperly denied its coverage obligations to Valspar under the Beazley Policy for the Employee Theft Claim.

21.     An actual controversy exists between Valspar and Beazley concerning Beazley's coverage obligations to Valspar for the Employee Theft Claim.

22.     Valspar seeks a judgment, pursuant to Minn. Stat. § 555.01, declaring and determining that, under the Beazley Policy, Beazley is obligated to provide coverage to Valspar in full for the Employee Theft Claim in excess of the $250,000 deductible in the Beazley Policy.

WHEREFORE, Valspar prays for relief and judgment in its favor and against Beazley on Count I as follows:

a.     Declaring that, under the Beazley Policy, Beazley is obligated to pay Valspar in full for all covered loss Valspar suffered as a result of the Employee Theft Claim in excess of the $250,000 deductible;

b.     Declaring that Beazley has breached its contractual obligations to Valspar under the Beazley Policy by wrongfully denying coverage for the Employee Theft Claim and by failing to pay Valspar for any of the covered loss Valspar suffered as a result of the Employee Theft Claim;

c.     Declaring that Beazley is obligated to pay Valspar all interest allowed by law, including but not limited to all interest due under Minn. Stat. § 60A.0811, subd. 2;

d.     Declaring that Beazley is obligated to pay all attorney and expert fees and expenses incurred by Valspar in this action that are allowed under applicable law;

e.    Otherwise declaring Valspar's rights and Beazley's obligations under the Beazley Policy and applicable law; and

f.    Declaring that Beazley is obligated to pay or provide to Valspar all other and further relief that the Court considers just, appropriate, necessary, or proper.

## COUNT II — BREACH OF CONTRACT

23.    Valspar repeats and realleges the preceding paragraphs of the Complaint as though fully set forth herein.

24.    Valspar has complied with the terms, conditions, and other requirements of the Beazley Policy, and Beazley was required to fulfill its coverage obligations under the Beazley Policy.

25.    Beazley has breached its contractual obligations under the Beazley Policy and applicable law by wrongfully denying its coverage obligations to Valspar for the Employee Theft Claim, and by refusing to cover Valspar's loss in excess of the $250,000 deductible, without justification.

26.    As a result of Beazley's breach of its obligations under Beazley Policy, Valspar has suffered damages in excess of $50,000.

WHEREFORE, Valspar prays for relief and judgment in its favor and against Beazley on Count II as follows:

a.    Awarding to Valspar all of the damages resulting from Beazley's breaches of contract;

b.    Awarding Valspar's costs of suit herein;

c.    Awarding Valspar all attorney and expert fees and expenses incurred by Valspar in this action that are allowed under applicable law;

    d.    Awarding Valspar all interest allowed by law, including but not limited to all interest due under Minn. Stat. § 60A.0811, subd. 2; and

    e.    Awarding Valspar all other and further relief that the Court deems just, appropriate, necessary or proper.

### JURY DEMAND

Valspar demands a jury on all issues so triable.

Respectfully submitted,

**BARNES & THORNBURG LLP**

Dated:  October 2, 2018        By*:*  */s/ Christopher L. Lynch*
                       Christopher Lynch (#0284154)
                       225 South Sixth Street, Suite 2800
                       Minneapolis, MN 55402
                       T: 612-333-2111
                       F: 612-333-6798
                       Email: christopher.lynch@btlaw.com

                       and

                       Andrew J. Detherage (*pro hac vice* to be filed)
                       John P. Fischer (*pro hac vice* to be filed)
                       11 S. Meridian Street
                       Indianapolis, IN 46204-3535
                       T:  317-236-1313
                       Email: andy.detherage@btlaw.com
                             john.fischer@btlaw.com

                       ***Attorneys for The Sherwin-Williams Company, as successor to The Valspar Corporation***

## ACKNOWLEDGMENT

The undersigned hereby acknowledge that sanctions may be awarded to the opposing

party pursuant to Minn. Stat. §549.211.

### BARNES & THORNBURG LLP

Dated:  October 2, 2018            By:*/s/ Christopher L. Lynch*
                                   Christopher Lynch (#0284154)
                                   225 South Sixth Street, Suite 2800
                                   Minneapolis, MN 55402
                                   T:  612-333-2111
                                   F: 612-333-6798
                                   Email:    christopher.lynch@btlaw.com
                                   and

                                   Andrew J. Detherage (*pro hac vice* to be filed)
                                   John P. Fischer (*pro hac vice* to be filed)
                                   11 S. Meridian Street
                                   Indianapolis, IN 46204-3535
                                   T:  317-236-1313
                                   Email:    andy.detherage@btlaw.com
                                             john.fischer@btlaw.com

                                   ***Attorneys for The Sherwin-Williams Company, as
                                   successor to The Valspar Corporation***

DMS 12933303v1

# Exhibit 1



**DECLARATIONS**
**CRIME INSURANCE POLICY**

These Declarations along with the completed and signed Application and the Policy with endorsements shall constitute the contract between the **Insureds** and the Insurer.

Insurer:        Beazley Insurance Company, Inc.

Policy Number: ████████0501

Item 1.         Insured: The Valspar Corporation

                Address: P.O. Box 1461
                Minneapolis, MN  55440

Item 2.         **Policy Period**:

                From: 20-Apr-2016

                To:    20-Apr-2017

                        Both dates at 12:01 a.m. Local Time at the Address stated in Item 1.

|  |  | Item 3: Limit of Liability | Item 4: Deductible |
|---|---|---|---|
| Insuring Clause A: | Employee Dishonesty | $20,000,000 each loss | $250,000 each loss |
| Insuring Clause B: | Forgery or Alteration | $20,000,000 each loss | $250,000 each loss |
| Insuring Clause C: | On Premises | $20,000,000 each loss | $250,000 each loss |
| Insuring Clause D: | In Transit | $20,000,000 each loss | $250,000 each loss |
| Insuring Clause E: | Money Orders and Counterfeit Paper Currency Fraud | $20,000,000 each loss | $1,000 each loss |
| Insuring Clause F: | Computer Fraud and **Funds Transfer Fraud** | $20,000,000 each loss | $250,000 each loss |
| Insuring Clause G: | Client Property Coverage | $20,000,000 each loss | $250,000 each loss |
| Insuring Clause H: | Credit Card Coverage | $20,000,000 each loss | $1,000 each loss |
| Insuring Clause I: | Expense Coverage Aggregate | $50,000 aggregate for the **policy period** | No deductible shall apply to Insuring Clause I. |

If "Not Covered" is listed opposite any Insuring Clause above, there shall be no coverage under such Insuring Clause under this Policy and any references thereto in the Policy shall be deemed deleted.

No Deductible shall apply to any loss involving any **Plan**.

Item 5.        Premium: $52,031

Item 6.        Notice of Insurer:

        a.   Notice Of Claim(s) To Be Sent To:

        Beth Diamond
        1270 Avenue of the Americas
        Suite 1200
        New York, NY 10020
        Tel: +1 (646) 943 5900
        Fax: +1 (646) 378 4039
        Beth.diamond@beazley.com

        b.   All other notices:

        Beazley USA Services, Inc.
        30 Batterson Park Road
        Farmington, CT 06032
        Tel: (860) 677 3700
        Fax: (860) 679 0247

Item 7.        Endorsements Effective At Inception:

| | | |
|---|---|---|
| 1. | E03337 112011 ed. | Delete Exclusion A.20. (Correction Endorsement) |
| 2. | A00576MN 042011 ed. | Minnesota Amendatory Endorsement |
| 3. | E02804 032011 ed. | Sanction Limitation and Exclusion Clause |
| 4. | BICMU05070406 | War and Civil War Exclusion |
| 5. | E02882 032012 ed. | Amend Cancellation Notification |
| 6. | E00387 032012 ed. | Amend Definition H. |
| 7. | E03384 112011 ed. | Amend Definition of Employee to Include Students and Employees on Military Leave |
| 8. | E03396 112011 ed. | Amend Definition of Subsidiary to Include Joint Ventures |
| 9. | E03500 012012 ed. | Amend Notice of Loss |
| 10. | BICCR05320807 | Amend Terminated Employee to 90 Days |
| 11. | BICCR05230407 | Counterfeit Currency of any Country |
| 12. | BICCR05090606 | Independent Contractor Endorsement |
| 13. | E07438 012016 ed. | Loss Discovered Conversion |
| 14. | E03394 112011 ed. | Tax Compensation Endorsement |
| 15. | E04633 042013 ed. | Diminution of Deductible Endorsement |
| 16. | E06749 022015 ed. | ERISA Endorsement |

Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

17. E06801 032015 ed.          Fraudulent Instruction Coverage

The Insurer has caused this Policy to be signed and attested by its authorized officers, but it shall not be valid unless also signed by another duly authorized representative of the Insurer.

_____          14-Apr-2016_____
Authorized Representative                      Date


_____          _____
Secretary                                          President

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ████████0501
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

## DELETE EXCLUSION A.20. (CORRECTION ENDORSEMENT)

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause III. Exclusion A.20 is deleted in its entirety.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ▮▮▮▮▮▮0501
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## MINNESOTA AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE POLICY**

1.　Clause **VI. Termination, Cancellation and Nonrenewal** C.2 and 3 are deleted and replaced with the following:

2.　If this Policy has been in effect for less than ninety (90) days and is not a renewal Policy, the Insurer may cancel this Policy for any reason by mailing via first class mail or delivering to the **Insured**, written notice of cancellation stating when, not less than sixty (60) days thereafter, such cancellation shall be effective. However, if the reason for cancellation is nonpayment of premium, the Insurer may cancel this Policy for any reason by mailing via first class mail or delivering to the **Insured** written notice of cancellation stating when, not less than ten (10) days thereafter such cancellation shall be effective.

If this Policy has been in effect for at least ninety (90) days or more or is a renewal Policy, the Insurer may cancel this Policy only for the following reasons:

(1) nonpayment of premium;

(2) misrepresentation or fraud made by or with the knowledge of the **Insured** in obtaining the policy or in pursuing a claim under the policy;

(3) actions by the **Insured** that have substantially increased or substantially changed the risk insured;

(4) refusal of the **Insured** to eliminate known conditions that increase the potential for loss after notification by the insurer that the condition must be removed;

(5) substantial change in the risk assumed, except to the extent that the Insurer should reasonably have foreseen the change or contemplated the risk in writing the contract;

(6) loss of reinsurance by the Insurer which provided coverage to the Insurer for a significant amount of the underlying risk insured; or

(7) a determination by the commissioner that the continuation of the Policy could place the insurer in violation of the insurance laws of this state.

If the Insurer cancels this Policy for any of the reasons set forth in 2. through 7. above, the Insurer shall mail via first class mail  or deliver written notice to the named **Insured** at least sixty (60) days before the effective date of cancellation. If the Insurer cancels this Policy for the reason set forth in 1. above, the Insurer shall mail via first class mail or deliver written notice to the named **Insured** at least ten (10) days prior to the effective date of cancellation.

3.　The notice of cancellation for any of the reasons above shall be mailed to the **Insured** at their last known address, and to the **Insured's** agent of record, if any.  A notice of cancellation

shall state the reason for cancellation.  Notice by first class mail is effective upon deposit in the United States mail. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**.

2.      Clause **VI. Termination, Cancellation and Nonrenewal** C. 6. is amended to add the following:

6. If written notice of nonrenewal is not given at least sixty (60) days before the date of expiration of the Policy, the Policy shall continue in force until sixty (60) days after a notice of intent not to renew is received by the **Insured**.

Written notice of nonrenewal shall be mailed via first-class mail to the **Insured.**  Notice by first class mail is effective upon deposit in the United States mail. The mailing of such notice shall be sufficient notice and the effective date of nonrenewal stated in the notice shall become the end of the **Policy Period**.

All other terms and conditions of this Policy remain unchanged.

_____

Authorized Representative

Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ███████0501
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### SANCTION LIMITATION AND EXCLUSION CLAUSE

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE POLICY**

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, law or regulations of the European Union, United Kingdom or United States of America.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E02804                                                                                      Page 1 of 1
032011 ed.

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ▮▮▮▮▮▮▮**0501**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## WAR AND CIVIL WAR EXCLUSION

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE POLICY**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that notwithstanding anything to the contrary contained herein this Policy does not cover loss or damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ▓▓▓▓▓▓**0501**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## AMEND CANCELLATION NOTIFICATION

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE POLICY**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause VI. General Conditions, C.2.(b) is amended to change the notice period for Insurer initiated cancellations to 90 days for all allowable reasons other than nonpayment of premium.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ████████**0501**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### AMEND DEFINITION H.

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE POLICY**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause II. **DEFINITIONS** H. is deleted and replaced with the following:

H.     **"Discovery"** or **"Discovered"** means the moment when the the risk management department or the office of the general counsel of the **Insured** first becomes aware of facts which would cause a reasonable person to believe that a loss covered by this Policy has been or will be incurred, even though the exact amount or details of loss may not then be known.  This includes loss:

1.     sustained prior to the coverage inception date shown in Item 2. of the Declarations; or

2.     which does not exceed the Deductible shown in Item 4. of the Declarations.

**"Discovery"** or "**Discovered**" also includes the **Insured's** receipt of notice of an actual or potential claim against the **Insured** alleging facts that if true would constitute a covered loss under this Policy.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ███████ **0501**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

## AMEND DEFINITION OF EMPLOYEE TO INCLUDE STUDENTS AND EMPLOYEES ON MILITARY LEAVE

This endorsement modifies insurance provided under the following:

## CRIME INSURANCE

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause II. Definitions I., "Employee" is amended by the addition of the following:

5.      students and/or interns gaining work experience;

6.      employees on leave of absence or military leave of absence;

but solely while such individuals are performing acts within the scope of the usual duties of an employee for or on behalf of the insured, and while under the supervision, direction and control of the Insured.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ███████0501
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## AMEND DEFINITION OF SUBSIDIARY TO INCLUDE JOINT VENTURES

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause II. Definitions BB. "Subsidiary" is amended to include participation in a Joint Venture, but only to the extent of the **Insured's** ownership interest, unless

1    The **Insured** has the largest ownership of any Joint Venture partner and

2    The **Insured** is contractually obligated to manage and supervise the operation and

3    The **Insured's** policies and procedures are established and adhered to for operation of the Joint Venture.

If all three conditions apply, then the Joint Venture will be covered 100%.

It is further understood that if the respective Joint Venture has other valid or collectible insurance, then this Policy shall apply as excess to that other valid and collectible insurance but only to the extent of the Insured's ownership interest.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ▮▮▮▮▮▮**0501**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### AMEND NOTICE OF LOSS

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE POLICY**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that the first paragraph of Section V. NOTICES, PROOF OF LOSS AND LEGAL PROCEEDINGS is deleted in its entirety and replaced with the following:

It is a condition precedent to coverage hereunder that, upon **Discovery** of loss or an occurrence which may result in a covered loss which exceeds or is likely to exceed 35% of the applicable Deductible Amount, the first named **Insured** shall comply with A., B. and C. below.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ▉▉▉▉**0501**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## AMEND TERMINATED EMPLOYEE TO 90 DAYS

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE POLICY**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause II. Definitions I.1.(a) is deleted and replaced with the following:

(a)      while in the regular service of the **Insured** in the ordinary course of its business or for 90 days after termination of service;

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ████████0501
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**COUNTERFEIT CURRENCY OF ANY COUNTRY**</u>

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause I. Insuring Clauses E. 2. is deleted and replaced with:

2.  counterfeit paper currency of any country that is acquired in the regular course of business from a **Third Party**.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ■■■■■■■**0501**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## INDEPENDENT CONTRACTOR ENDORSEMENT

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE POLICY**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.  Clause II. Definitions I. "**Employee**" is amended to include any independent contractor placed by any **Insured** at a **Client's** location while in the regular service of the **Insured** in the ordinary course of the **Insured's** business whose services are at the exclusive direction of the **Insured** pursuant to a written contract.

2.  Clause III. Exclusions B.1. shall not apply to any independent contractor as described in paragraph 1. above.

3.  The Deductible applicable to loss caused by an independent contractor as described in paragraph 1. above under Insuring Clause I.A. shall be $250,000 which shall be deemed to be the deductible in Item 4. of the Declarations.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

BICCR05090606                                                                                   Page 1 of 1

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ▮▮▮▮▮**0501**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## LOSS DISCOVERED CONVERSION

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.　　　Clause III. Exclusions F. is deleted and replaced with:

　　　F.　　Subject to Clause VI.D of this Policy, no coverage will be available under this Policy for loss or damage unless:

　　　　　1.　　**Discovered** during the **Policy Period**; or

　　　　　2.　　**Discovered** during the discovery period described in Clause IV.D. of this Policy.

　　　　　In no event will coverage be available under this Policy for such loss if such loss is covered under any renewal or replacement of this Policy in whole or in part.

2.　　　Clause IV. Limits of Liability, Non-Accumulation of Liability, Deductible, Discovery Period D. is deleted and replaced with:

　　　**D.**　　**Discovery**

　　　　　Subject to Clause VI. D. of this Policy, this Policy only applies to loss which is **Discovered** during the **Policy Period**.

　　　　　**Loss** is covered under this Policy only if **Discovered** no later than 60 days from the end of the **Policy Period** (such 60 day period is the "discovery period"). At any time prior to the termination of this Policy, the **Insured** may give written notice to the Insurer requesting an extension of the discovery period for loss under this Policy to 12 months from the end of the **Policy Period** and shall pay an additional premium to be determined by the Insurer in its sole discretion. The discovery period terminates immediately upon the inception date of any other insurance obtained by the **Insured** replacing in whole or in part the insurance afforded hereunder whether or not such other insurance provides coverage for loss sustained prior to its effective date. There shall be no coverage under this Policy for loss sustained during the discovery period or extended discovery period. In all events, the 12 month extension will not be available if this Policy is cancelled as provided in Clause VI.C.2.(a).

3.　　　Clause VI. General Conditions D. is amended to include:

　　　Coverage will be available for loss sustained at any time and **Discovered** during the **Policy Period**, provided that coverage for loss sustained prior to the effective date of this **Policy Period**, or the effective date of coverage for any additional **Insureds**, or the effective date of any coverage added by endorsement, is subject to the following:

A.  if an **Insured** or some predecessor in interest of such **Insured** carried a prior bond or policy which afforded coverage for a loss sustained during the period of such prior bond or policy and such prior bond or policy was not issued by the Insurer or its affiliates and such loss was first **Discovered** by an **Insured** prior to the expiration of the time allowed for discovery under the last such policy, then no coverage shall be available under this Policy, unless the total amount of covered loss exceeds the limit of liability of the last such bond or policy carried by the Insured or predecessor in interest of such **Insured**, and the Company's Limit of Liability for any such loss will be in excess of the limit of liability of the last bond or policy subject to all of the terms and conditions of this Policy; or

B.  if an **Insured** or some predecessor in interest of such **Insured** carried a prior bond or policy which afforded coverage for a loss sustained during the period of such prior bond or policy and such prior bond or policy was issued by the Insurer or its affiliates then such prior bond or policy shall terminate as of the inception of this Policy and such prior bond or policy shall not cover any loss not discovered and noticed to the Insurer prior to the inception of this Policy then the Insurer's Limit of Liability for such loss shall be the applicable Limit of Liability shown on the Declarations of this Policy.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ▇▇▇▇▇▇**0501**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## TAX COMPENSATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.      The Insurer shall adjust the amount of any loss paid in the United States to compensate for additional federal or state tax liability incurred by the **Insured** as a result of the payment of such loss in the United States rather than in the country in which such loss was sustained, provided that:

   A.      The loss was sustained by an entity not subject to United States or state tax provisions; and

   B.      The payment for such loss is reportable income under the Internal Revenue Code and Regulations or the tax laws of any state or commonwealth of the United States.

   **Loss Payment** shall be adjusted using the following formula:

$$\text{Final Payment equals Loss Payment} \times \frac{\text{One minus the Marginal Foreign Tax Rate}}{\text{One minus the Marginal U.S. and State Tax Rate}}$$

2.      Solely for the purposes of this endorsement, clause II. Definitions is amended by the addition of the following:

   **"Final Payment"** means the amount paid after tax adjustment.

   **"Loss Payment"** means the amount to be paid prior to tax adjustment.

   **"Marginal Foreign Tax Rate"** means the marginal rate of income taxation of the Insured entity sustaining the loss during the local tax year in which such loss is written off.

   **"Marginal U.S. and State Tax Rate"** means the marginal rate of Federal and State income taxation of the **Insured**, in the United States, of the loss payment for the tax year in which such loss is to be made.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ███████ **0501**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## DIMINUTION OF DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

## CRIME INSURANCE POLICY

In consideration of the premium charged for the Policy, it is hereby understood and agreed that, with respect to a loss for which coverage is provide by this policy and which is sustained partly during the period of other policies providing coverage for such loss issued to the **Insured** or to any predecessor in interest of the **Insured** and terminated or cancelled or allowed to expire as of the inception date of this policy, the amount of the deductible that is applicable to the portion of the loss sustained during this policy period shall be reduced, in whole or in part, by:

1. The amount of the loss which is sustained by the **Insured** during the period of other polices if such loss is less than the amount of the deductible applicable to that loss under these other polices, or

2. The amount of the deductible applicable to the loss sustained by the **Insured** during the period of the other polices if the applicable deductible is less than the amount of the loss sustained during that period.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ▮▮▮▮▮**0501**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### ERISA ENDORSEMENT

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.  Insuring Clause A. Employee Dishonesty is deleted in its entirety and replaced with the following:

    A.  **EMPLOYEE DISHONESTY**

        The Insurer shall indemnify the **Insured** for:

        1.  loss of or damage to **Money**, **Securities** or **Property** resulting directly from **Employee Theft** or **Employee Forgery**, and

        2.  loss of **Money**, **Securities** or **Property** sustained by an **ERISA Plan** resulting from a **Fraudulent or Dishonest Act** committed by an **Employee** acting alone or in collusion with others.

2.  Solely with respect to loss sustained by an **ERISA Plan**, Clause IV., paragraph D. is amended by the addition of:

    Loss for **Plan** assets is covered under this Policy only if **Discovered** no later than twelve (12) months from the end of the **Policy Period**, as required under ERISA.

3.  Clause II. Definitions, paragraph U. "**Plan**" is deleted in its entirety and replaced with the following:

    U.  "**ERISA Plan**" means any Employee Benefit Plan, Pension Benefit Plan, or Welfare Benefit Plan, defined and required to be bonded under Title 1 of the Employee Retirement Income Security Act of 1974, as amended, which is operated solely by an Organization or jointly by an Organization and a labor organization for the benefit of **Employees** and which existed on or before the inception of this Policy or which is created or acquired after the inception of this Policy.

4.  For purposes of this Endorsement, all references to "**Plan**" in this Policy are deleted and replaced with "**ERISA Plan**".

5.  Clause II. Definitions is amended by the addition of:

    "**Fraudulent or Dishonest Act**" shall be defined as having the meaning set forth in Title 29, Code of Federal Regulations, Section 2580.412-9, as amended.

6.  Clause III. Exclusions, paragraphs 7. and 8. are deleted in their entirety and replaced with the following:

    7.      the authorized or unauthorized trading of **Money, Securities** or **Property**, whether or not in the name of the **Insured** and whether or not in a genuine or fictitious account; provided however, that this exclusion does not apply to direct losses caused by **Employee Theft** that results in improper financial gain to such **Employee**; provided further that salary, commissions, fees or other emoluments, including but not limited to promotions and raises associated with employment, paid by the **Insured** to such **Employee**, shall not constitute improper financial gain, provided this exclusion does not apply to loss of **Money**, **Securities** or **Property** sustained by an **ERISA Plan** resulting from a

**Fraudulent or Dishonest Act** committed by an **Employee** acting alone or in collusion with others;

8.   loss of trade secrets, confidential processing methods, confidential information, patents, copyrights, trademarks or intangible or intellectual property of any kind, provided this exclusion does not apply to loss of **Money**, **Securities** or **Property** sustained by an **ERISA Plan** resulting from a **Fraudulent or Dishonest Act** committed by an **Employee** acting alone or in collusion with others;

7.   Solely with respect to loss sustained by an **ERISA Plan,** payment by the Insurer for covered loss shall be to the **ERISA Plan** sustaining such loss. If such payment is in excess of the amount of coverage required by ERISA for any such **ERISA Plan(s)**, such excess shall be held for the use and benefit of any other named **ERISA Plan(s)** should such **ERISA Plan(s)** also discover loss recoverable hereunder.

With respect to any **ERISA Plan(s**):

1.   if covered loss is sustained by any **ERISA Plan** which does not have any employer securities, the Limit of Liability applicable to such covered loss shall be the lesser of ten percent (10%) of the **ERISA Plan's** funds handled as of the beginning of such **ERISA Plan's fiscal** year or five hundred thousand dollars ($500,000); or

2.   if covered loss is sustained by any **ERISA Plan** which does have any employer securities, the Limit of Liability applicable to such covered loss shall be the lesser of ten percent (10%) of the **ERISA Plan's** funds handled as of the beginning of such **ERISA Plan's** fiscal year or one million ($1,000,000);

provided that, in all events:

(a)   if the applicable Limit of Liability as set forth in the Declarations is less than the amounts set forth in paragraphs 1. or 2. above, then the applicable Limit of Liability shall be amended to the respective amounts set forth in paragraphs 1. or 2. above; or

(b)   if the applicable Limit of Liability as set forth in the Declarations equals or exceeds the amounts set forth in paragraphs 1. or 2. above, then the applicable Limit of Liability shall be the Limit of Liability as set forth in the Declarations applicable to this coverage section.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

27-CV-18-16565

CASE 0:18-cv-02964-DWF-DTS   Document 1-1   Filed 10/19/18   Page 39 of 122   Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ▮▮▮▮▮▮**0501**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### FRAUDULENT INSTRUCTION COVERAGE

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE POLICY**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.   Clause I. Insuring Clauses is amended by the addition of:

   FI.   **FRAUDULENT INSTRUCTION**

   The Insurer shall indemnify the first named **Insured** for loss resulting directly from an **Insured** having transferred, paid, or delivered any **Money** or **Securities** as a direct result of **Fraudulent Instructions** provided by a person purporting to be a **Vendor**, **Client**, or an **Authorized Employee**.

2.   Clause II. Definitions is amended by the addition of:

   **"Authorized Employee"** means an **Employee** who is authorized by the **Insured** to transfer **Money** or **Securities** or to instruct other **Employees** to transfer **Money** or **Securities**.

   **"Fraudulent Instructions"** means a fraudulent written instruction, electronic instruction (including email or web-based instruction) or telephone instruction that is intended to mislead an **Insured** through the misrepresentation of a material fact that is relied upon in good faith by such **Insured**.

   **"Out-of-Band Authentication"** means a method of challenge and response to the requestor of a transfer, payment or delivery of **Money** or **Securities** by an **Insured**, via a method other than the original means of request, to verify the authenticity or validity of the request.

   **"Vendor"** means any entity or natural person that provides goods or services to the **Insured** pursuant to a written agreement.

3.   The Insurer shall not be liable under this Policy for any loss or damage sustained by any **Insured** that results from or arises out of, directly or indirectly, any actual or purported instruction to transfer **Money, Securities, Property, Merchandise, Data** or any other item or information; provided that this exclusion shall not apply to loss to which Insuring Clause I.FI. applies.

4.   All losses arising out of or resulting from the same **Fraudulent Instruction**, multiple or a series of **Fraudulent Instructions** purporting to be from the same **Vendor**, **Client** or **Authorized Employee** or related **Vendors**, **Clients** or **Authorized Employees**, or multiple or a series of **Fraudulent Instructions** from the same **Third Party** or related **Third Parties** shall be deemed a single loss under this Policy subject to the each loss limit set forth in Section 6. of this Endorsement.

5.   Clause III. Exclusions is amended by the addition of:

   FI.   The Insurer shall not be liable under Insuring Clause I.FI. for loss or damage arising out of or resulting from, either directly or indirectly:

1.  the actual or alleged use of credit, debit, charge, access, convenience, customer identification or other cards;

2.  any transfer of money, goods, information or other item involving any person or entity that had authorized access to the **Insured's** authentication mechanism;

3.  the processing of, or the failure to process, credit, check, debit, personal identification number debit, electronic benefit transfers or mobile payments for merchant accounts; or

4.  any **Fraudulent Instruction** that was not verified with the requestor using an Out-of-Band Authentication.

6.  Items 3. and 4. of the Declarations are amended by the addition of:

|  |  | Item 3: Limit of Liability | Item 4: Deductible |
|---|---|---|---|
| Insuring Clause FI: | Fraudulent Instruction Coverage | $100,000 each loss | $250,000 each loss |

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

Filed in District Court
State of Minnesota
10/2/2018 2:27 PM



**CRIME INSURANCE POLICY**

In consideration of payment of the premium and in reliance on all statements made in the Application for this Policy and all information provided to the Insurer and subject to all the provisions of this Policy, the Insurer and the first named **Insured** on behalf of all **Insureds** agree:

**I.      INSURING CLAUSES**

      **A.      EMPLOYEE DISHONESTY**
            The Insurer shall indemnify the **Insured** or any **Plan** for loss of or damage to **Money**, **Securities** or **Property** resulting directly from **Employee Theft** or **Employee Forgery**.

      **B.      FORGERY OR ALTERATION**
            The Insurer shall indemnify the **Insured** for loss resulting directly from **Forgery** or alteration by a **Third Party** of any checks, drafts, promissory notes or similar written promises, orders or directions to pay a sum certain in **Money** that are:

            1.      made or drawn by or upon the **Insured** or that are purported to have been so made or drawn; or

            2.      made or drawn by one acting as the **Insured's** agent or that are purported to have been so made or drawn.

      **C.      ON PREMISES**
            The Insurer shall indemnify the **Insured** for loss resulting directly from:

            1.      **Robbery, Safe Burglary** or **Theft** committed solely by a **Third Party** of **Money, Securities** or **Property** within the **Premises** or **Banking Premises**;

            2.      physical destruction, misplacement or mysterious unexplainable disappearance of **Money, Securities** or **Property** from the **Premises**;

            3.      loss of or damage to **Property** within the **Premises** resulting from an actual or attempted **Robbery, Safe Burglary** or **Theft** committed solely by a **Third Party**;

            4.      damage to the **Premises** or its exterior resulting from an actual or attempted **Robbery, Safe Burglary** or **Theft** committed solely by a **Third Party** but only to the extent that the **Insured** is the owner of the **Premises** or is liable for such damage; or

            5.      loss of or damage to a locked safe, vault, cash box, cash register or cash drawer within the **Premises** resulting from an actual or attempted **Robbery**, **Safe Burglary**

or **Theft** committed solely by a **Third Party**.

**D.    IN TRANSIT**

The Insurer shall indemnify the **Insured** for loss resulting directly from:

1.   **Robbery** or **Theft** committed solely by a **Third Party** of **Money** or **Securities** while outside the **Premises** or **Banking Premises** in the care and custody of a **Messenger** or armored motor vehicle company or while temporarily within the living quarters of the **Messenger**;

2.   physical destruction, misplacement or mysterious unexplainable disappearance of **Money** or **Securities** while outside the **Premises** or **Banking Premises** in the care and custody of a **Messenger** or armored motor vehicle company or while temporarily within the living quarters of the **Messenger**; or

3.   damage from an actual or attempted **Robbery** or **Theft** committed solely by a **Third Party** to the **Insured's Property** while outside the **Premises** or **Banking Premises** in the care and custody of a **Messenger** or armored motor vehicle company or while temporarily within the living quarters of the **Messenger**.

**E.    MONEY ORDERS AND COUNTERFEIT PAPER CURRENCY FRAUD**

The Insurer shall indemnify the **Insured** for loss resulting directly from the **Insured's** acceptance in good faith, in exchange for **Merchandise, Money** or services of:

1.   any money order issued or purporting to have been issued by any post office, express company or bank, if such money order is not paid upon presentation; or

2.   counterfeit United States or Canadian paper currency that is acquired in the regular course of business from a **Third Party**.

**F.    COMPUTER FRAUD AND FUNDS TRANSFER FRAUD**

The Insurer shall indemnify the **Insured** for:

1.   loss of or damage to **Money, Securities** or **Property** resulting directly from **Computer Fraud** committed solely by a **Third Party**; or

2.   loss of **Money** or **Securities** contained in a **Transfer Account** at a **Financial Institution** resulting directly from **Funds Transfer Fraud** committed solely by a **Third Party**.

**G.    CLIENT PROPERTY COVERAGE**

The Insurer shall indemnify for loss of or damage to **Money**, **Securities** or **Property**

sustained by a **Client** resulting directly from **Theft** or **Forgery** committed by an identified **Employee** not in collusion with the **Client** or any agent or employee of the **Client**, but only to the extent the **Insured** is legally liable to the **Client** for such loss.

**H.   CREDIT CARD COVERAGE**

The Insurer shall indemnify the **Insured** for loss resulting directly from **Credit Card Fraud**.

**I.   EXPENSE COVERAGE**

The Insurer shall indemnify the **Insured** for **Expenses** incurred by the **Insured** and that results from any direct loss covered hereunder.

**II.   DEFINITIONS**

The following terms whenever used in this Policy in boldface type shall have the meanings indicated.

A.   **"Banking Premises"** means the interior of that portion of any building occupied by a banking institution or similar safe depository institution, including any night depository chute or safe maintained by the institution.

B.   **"Client"** means a customer of the **Insured** to whom the **Insured** provides goods or services under a written contract or for a fee.

C.   **"Computer Fraud"** means the **Theft** of **Money, Securities** or **Merchandise** by a **Third Party**, through the use of any **Computer System**.

D.   **"Computer System"** means a computer or computer network including input, output, processing, storage and communication facilities and shall include off-line media libraries.

E.   **"Computer Violation"** means an intentional, unauthorized and malicious:

1.   entry of **Data** into a **Computer System**;

2.   change to date elements or program logic which is kept in machine readable format; or

3.   introduction of instructions, programmatic or otherwise, which propagate themselves through a **Computer System**.

F.   **"Credit Card Fraud"** means **Forgery** or alteration of, on or in, any written instrument required in connection with any credit, debit or access card issued to the **Insured** or at the request of the **Insured**, for business purposes of the **Insured**, to any **Employee** of the **Insured**; provided such **Forgery** or alteration is committed by a **Third Party**.

G.  **"Data"** means information contained in manuscripts, records, accounts, microfilms, tapes or other records, whether or not contained in a **Computer System**.

H.  **"Discovery"** or "**Discovered**" means the moment when the **Insured** or any director, trustee, officer, administrator, manager, partner or insurance representative of the **Insured** first becomes aware of facts which would cause a reasonable person to believe that a loss covered by this Policy has been or will be incurred, even though the exact amount or details of loss may not then be known.  This includes loss:

1.  sustained prior to the coverage inception date shown in Item 2. of the Declarations; or

2.  which does not exceed the Deductible shown in Item 4. of the Declarations.


**"Discovery"** or "**Discovered**" also includes the **Insured's** receipt of notice of an actual or potential claim against the **Insured** alleging facts that if true would constitute a covered loss under this Policy.


I.  **"Employee"** means:

1.  a natural person:

    (a)  while in the regular service of the **Insured** in the ordinary course of its business or for 30 days after termination of service;

    (b)  whom the **Insured** has the right to direct and control while performing labor or service for the **Insured** whether such labor or service is on a part-time, temporary, seasonal or full-time basis; and

    (c)  who is compensated directly by the **Insured** through salary, wages or commissions;

2.  a natural person who is a volunteer or leased **Employee** directed and controlled by the **Insured** while performing labor or service for the **Insured** pursuant to a lease or other written contract to which the **Insured** is a party;

3.  a natural person who is a director, trustee, officer, administrator, manager or partner of the **Insured,** when performing acts coming within the scope of the usual duties of an **Employee**; or

4.  a natural person who is a trustee, officer, employee, administrator, fiduciary or manager of any **Plan** or any other natural person who is required to be bonded by Title 1 of the Employee Retirement Income Security Act of 1974, as amended.

The term **Employee** does not include any agent, broker, commission merchant or

independent contractor of the **Insured**.

J. **"Employee Forgery"** means **Forgery** or alteration by an **Employee** of any checks, drafts, promissory notes or similar written promises, orders or directions to pay a sum certain in **Money,** that are:

1. made or drawn by or drawn upon the **Insured** or that are purported to have been so made or drawn; or

2. made or drawn by one acting as the **Insured's** agent or that are purported to have been so made or drawn.

**"Employee Forgery"** includes **Forgery** or alteration by an **Employee** of, on or in, any written instrument required in connection with any credit, debit or access card issued to the **Insured** or at the request of the **Insured**, to any **Employee** of the **Insured**.

K. **"Employee Theft"** means the unlawful taking of **Money, Securities** or **Property** to the deprivation of an **Insured** by an **Employee**, whether identified or not, acting alone or in collusion with others.

L. **"Executive Shareholder"** means any **Employee**, director, trustee, officer, administrator, manager, partner, or shareholder of the **Insured** that has a 25% or greater ownership interest in the **Insured** or any other person or entity that has a 25% or greater ownership interest in the **Insured**.

M. **"Expenses"** means reasonable expenses, other than an **Insured's** internal corporate costs (such as **Employee** remuneration or **Employee** expenses), incurred by an **Insured** with the Insurer's prior written consent to:

1. establish the existence and amount of a covered loss in excess of the Deductible;

2. reproduce **Data**; or

3. repair or replace to a substantially similar standard any safe or vault damaged as a result of **Robbery** or **Safe Burglary**.

With respect to **Forgery** coverage under Insuring Clause I.B., **Expenses** also means reasonable attorney fees, court costs and legal expenses incurred and paid with the Insurer's prior written consent by the **Insured** in defending the **Insured** in any legal proceeding to enforce payment of checks, drafts or similar written promises, orders or directions to pay a sum of certain money that are made, drawn by or drawn upon an **Insured** or by anyone acting as an **Insured's** agent or that are purported to have been so made or drawn upon.

With respect to **Credit Card Fraud** coverage under Insuring Clause I.H., **Expenses** also

means reasonable attorney fees, court costs and legal expenses incurred and paid with the Insurer's prior written consent in defending an **Insured** in any legal proceeding brought against it to enforce payment of a written instrument in connection with a credit card.

N.   **"Financial Institution"** means:

1.   a bank, credit union, saving and loan association, trust company or other licensed financial service where the **Insured** maintains a **Transfer Account**; or

2.   a securities broker-dealer, mutual fund, liquid assets fund or similar investment company where the **Insured** maintains a **Transfer Account**.

O.   **"Forgery"** means the signing of another natural person or entity's name with intent to deceive, but does not mean a signature that includes one's own name, with or without authority, in any capacity for any purpose.  Mechanically or electronically produced or reproduced signatures shall be treated the same as hand-written signatures.

P.   **"Funds Transfer Fraud"** means fraudulent written, electronic, telegraphic, cable, teletype or telephone instructions by a **Third Party** issued to a **Financial Institution** directing such institution to transfer, pay or deliver **Money** or **Securities** from any account maintained by an **Insured** at such institution, without the **Insured's** knowledge or consent.

Q.   **"Insured(s)"** means the entity designated in Item 1. of the Declarations and/or any additional **Insureds** listed therein and any **Subsidiary**.

R.   **"Merchandise"** means the **Insured's** inventory, raw materials, work in progress and manufactured or distributed products.

S.   **"Messenger"** means any **Insured** or **Employee** duly authorized by the **Insured** to have care and custody of **Money**, **Securities** or the **Insured's Property** outside the **Premises**.

T.   **"Money"** means:

1.   currency, coins or bank notes in current use and having a face value; and

2.   traveler's checks, register checks or money orders held for sale to the public.

U.   **"Plan"** means any Employee Welfare or Pension Benefit Plan, as defined in Title I of the Employee Retirement Income Security Act of 1974 and any amendments thereto (collectively "ERISA") which is or becomes solely sponsored by the **Insured**.

V.   **"Policy Period"** means the period from the effective date and time of this Policy to the Policy expiration date and time as set forth in Item 2. of the Declarations or its earlier cancellation or termination, if any, pursuant to Clause VI. D. of this Policy.

W.   **"Premises"** means the interior portion of any building occupied by the **Insured** in conducting its business.

X.   **"Property"** means tangible property other than **Money** or **Securities** that has intrinsic value but does not include any property excluded under this Policy.

Y.   **"Robbery"** means the unlawful taking of **Money, Securities** or **Property** from the custody of an **Employee** or other person authorized by an **Insured** to act as custodian of such **Money, Securities** or **Property**, except a person acting as a watchman, porter or janitor, by violence or threat of violence, committed in the presence and cognizance of such person.

Z.   **"Safe Burglary"** means the unlawful taking of **Money, Securities** or **Property** by forcible or violent entry, evidenced by visible marks, from a locked vault or safe located within the **Premises**.

AA.   **"Securities"** means negotiable and non-negotiable instruments or contracts representing either **Money** or **Property** and includes:

1.   tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

2.   evidences of debt issued in connection with credit or charge cards, which cards are not issued by the **Insured**,

but does not include **Money**.

BB.   **"Subsidiary"** means any entity, while more than 50% of the outstanding voting securities representing the present right to vote for the election of such entity's directors or the right to elect or otherwise designate more than 50% of such entity's managers is owned or controlled by the **Insured** directly or indirectly, if such entity:

1.   was so owned prior to the inception date of this Policy and was insured under a policy issued by the Insurer of which this Policy is a renewal;

2.   was so owned on the inception date of this Policy;

3.   becomes so owned after the inception date of this Policy pursuant to Clause VII.B.1.

CC.   **"Theft"** means any act of stealing.

DD.   **"Third Party"** means any person or entity other than an **Insured, Employee** or **Executive Shareholder**.

EE. **"Transfer Account"** means an account maintained by the **Insured** at a **Financial Institution** from which the **Insured** can initiate the transfer, payment or delivery of **Money** or **Securities**.

## III. EXCLUSIONS

A. The Insurer shall not be liable under any Insuring Clause for loss or damage sustained by any **Insured** resulting directly or indirectly from:

1. any fraudulent, dishonest or criminal act or omission by any **Insured** or any **Executive Shareholder** thereof whether acting alone or in collusion with others;

2. any fraudulent, dishonest or criminal act or omission by any **Employee**:

   (a) whether acting alone or in collusion with any other person or entity; or

   (b) while performing services for the **Insured** or otherwise;

   except when covered under Insuring Clause I.A., I.G. or I.I.

3. nuclear reaction, nuclear radiation, radioactive contamination or any related act or incident;

4. damage to the **Premises** resulting from fire, however caused;

5. damage to **Money, Securities** or **Property** while in the care and custody of an armored motor vehicle company; however this exclusion shall not apply in the event the **Insured** cannot recover the amount of loss:

   (a) under the **Insured's** contract with such armored motor vehicle company; or

   (b) from any insurance or indemnity carried by or for the benefit of customers of, the armored motor vehicle company;

6. salary, commissions, fees or other emoluments, including but not limited to promotions and raises associated with employment, properly or improperly paid by the **Insured** to an **Employee**;

7. the authorized or unauthorized trading of **Money, Securities** or **Property**, whether or not in the name of the **Insured** and whether or not in a genuine or fictitious account; provided however, that this exclusion does not apply to direct losses caused by **Employee Theft** that results in improper financial gain to such **Employee**; provided further that salary, commissions, fees or other emoluments, including but not limited to promotions and raises associated with employment, paid

by the **Insured** to such **Employee**, shall not constitute improper financial gain;

8. loss of trade secrets, confidential processing methods, confidential information, patents, copyrights, trademarks or intangible or intellectual property of any kind;

9. loss to or damage to the **Premises**, except as covered under Insuring Clause I.C.;

10. loss to or damage to any property, safe, vault, or to the **Premises** or its exterior, by vandalism or malicious mischief.

11. based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving any failure or omission on the part of the **Insured** to obtain or maintain adequate insurance;

12. accounting or arithmetical errors or omissions;

13. income not realized as the result of a covered loss;

14. indirect or consequential loss of any kind except for covered **Expenses** under Insuring Clause I.I.;

15. punitive, exemplary or multiplied damages of any kind;

16. matters deemed uninsurable under the law pursuant to which this Policy shall be construed;

17. taxes, loss of tax benefits, or fines or penalties imposed by law;

18. the **Insured** knowingly having given or surrendered **Money, Securities** or **Property** in any exchange or purchase with a **Third Party**, not in collusion with an **Employee**; provided that this Exclusion shall not apply to loss under Insuring Clause I.E;

19. fees, costs or expenses incurred or paid by an **Insured** in defending or prosecuting any legal proceeding or claim, provided that this Exclusion shall not apply to the coverage provided under Insuring Clause I.I.;

20. loss caused by an **Employee** which is **Discovered** after a director, trustee, officer, administrator, manager, partner or **Executive Shareholder** of the **Insured** acquires at any time knowledge of:

   (a) **Employee Theft** while such **Employee** is employed with an **Insured**; or

   (b) fraud or dishonesty involving **Money, Securities** or **Property** valued at $25,000 or more committed by such **Employee** prior to his or her employment with an **Insured**;

    21.    **Expenses** incurred:

        (a)    as a result of the reconstitution of **Data** recorded on magnetic or optical media if there are no analysis files, specifications, nor backups of software or **Data** held outside the **Premises**;

        (b)    as a result of the reconstitution of **Data** if an **Insured** knowingly uses illegal copies of programs;

        (c)    to render the **Data** usable by replacement processing equipment;

        (d)    to design, update or improve software or programs or to perfect their operation or performance;

        (e)    as a result of an alteration in **Data** held on magnetic media due to the effect of magnetic fields, their incorrect use or the obsolescence of the **Computer System**; or

        (f)    by a customer of an **Insured** to whom an **Insured** provides goods or services under written contract or for a fee; or

    22.    a kidnap, ransom or other extortion payment surrendered to any person as a result of a threat to do bodily harm to any person or a threat to do damage to any property.

B.    The Insurer shall not be liable under Insuring Clause I.A., I.G. or I.I. for loss or damage sustained by any **Insured** caused directly or indirectly by:

    1.    any agent, broker, factor, commission merchant, consignee, contractor, independent contractor, subcontractor, or similar person or entity; or

    2.    any **Employee** acting alone or in collusion with any other employee more than 30 days following the termination of such **Employee**.

C.    The Insurer shall not be liable under Insuring Clause I.C., I.D. or I.I. for loss or damage sustained by any **Insured** resulting directly or indirectly from:

    1.    **Forgery, Computer Fraud, Funds Transfer Fraud, Money Orders and Counterfeit Paper Currency Fraud** or **Credit Card Fraud**; or

    2.    loss of or damage to **Money, Securities** or **Property** while in the mail or in the custody of a carrier for hire other than an armored motor vehicle company.

D.    The Insurer shall not be liable under Insuring Clause I.F. or I.I. for direct or indirect loss or damage sustained by any **Insured** more than 60 days after any **Insured** becomes aware

of a **Computer Fraud** or other fraudulent, dishonest or criminal act committed by a **Third Party**.

E.      The Insurer shall not be liable under Insuring Clause I.H. or I.I. for loss or damage sustained by any **Insured** resulting directly or indirectly from **Forgery** or alteration of, on or in any written instrument; provided that this Exclusion shall not apply if:

1.      the terms and conditions under which the credit, debit or access card was issued were fully complied with; and

2.      an **Insured** is legally liable to the issuer of such credit, debit or access card for such loss.

F.      Subject to Clause VI. D of this Policy, no coverage will be available under this Policy for loss or damage unless sustained through acts committed during the **Policy Period** and:

1.      **Discovered** during the **Policy Period**; or

2.      **Discovered** during the discovery period described in Clause IV. D. of this Policy.

In no event will coverage be available under this Policy for such loss if such loss is covered under any renewal or replacement of this Policy in whole or in part.

## IV.     LIMITS OF LIABILITY, NON-ACCUMULATION OF LIABILITY, DEDUCTIBLE, DISCOVERY PERIOD

### A.     Limits of Liability

The Insurer's maximum limit of liability for each loss shall be the Limits of Liability for each Insuring Clause I.A. through I.H. as set forth in Item 3. in the Declarations.  The payment of loss under one Insuring Clause shall not reduce the Limit of Liability available for the other Insuring Clauses.

A loss resulting from a single act or any number of acts in which the same **Employee** or **Third Party** is concerned or implicated, whether such act or acts occurred before or during the **Policy Period**, will be treated as a single loss hereunder.

If a loss is covered under more than one Insuring Clause, the maximum amount payable under this Policy shall not exceed the largest single applicable Limit of Liability of such Insuring Clauses as provided in Item 3. of the Declarations.

The Insurer's maximum aggregate limit of liability for all **Expenses** incurred during the **Policy Period** shall be the Limit of Liability applicable to Clause I.I. as set forth in Item 3. of

the Declarations.

**B.     Non-Accumulation of Liability**

When there is more than one **Insured** involved in a loss, the maximum liability of the Insurer for loss sustained by one or all such **Insureds** shall not exceed the amount for which the Insurer would be liable if all losses were sustained by any one of the **Insureds**.

Regardless of the number of years this coverage remains in effect and the total premium amounts due or paid, the amount the Insurer shall pay for a loss shall not be cumulative from year to year or from one **Policy Period** to another policy period.

**C.     Deductible**

The Insurer shall pay loss that exceeds the amount of recoveries made prior to such payment, less the applicable Deductible set forth in the Item 4. of the Declarations.

If an **Insured** receives payment under another Policy or bond which was issued to the **Insured**, after applying a deductible, for loss also covered hereunder, then the Deductible set forth in Item 4 of the Declarations shall be reduced by the deductible previously applied to such loss.

**D.     Discovery**

Subject to Clause VI. D. of this Policy, this Policy only applies to loss which is sustained during the **Policy Period**.

**Loss** is covered under this Policy only if **Discovered** no later than 60 days from the end of the **Policy Period** (such 60 day period is the "discovery period").  At any time prior to the termination of this Policy, the **Insured** may give written notice to the Insurer requesting an extension of the discovery period for loss under this Policy to 12 months from the end of the **Policy Period** and shall pay an additional premium to be determined by the Insurer in its sole discretion.  The discovery period terminates immediately upon the inception date of any other insurance obtained by the **Insured** replacing in whole or in part the insurance afforded hereunder whether or not such other insurance provides coverage for loss sustained prior to its effective date.  There shall be no coverage under this Policy for loss sustained during the discovery period or extended discovery period.  In all events, the 12 month extension will not be available if this Policy is cancelled as provided in Clause VI. D. 2. (c).

**V.     NOTICES, PROOF OF LOSS AND LEGAL PROCEEDINGS**

It is a condition precedent to coverage hereunder that, upon **Discovery** of loss or an occurrence which may result in a covered loss, the first named **Insured** shall comply with A., B. and C. below.

A.   The first named **Insured** shall give written notice to the Insurer at the earliest practicable moment and in any event within the earliest of:

1.   90 days of **Discovery**; or

2.   90 days following termination of the Policy.

Such notice to the Insurer shall be given to the firm shown in Item 6. of the Declarations at the address set forth therein.

B.   The first named **Insured** shall furnish a sworn proof of loss with full particulars to The Insurer within 6 months of **Discovery** and shall thereafter:

1.   submit to examination under oath at the Insurer's request;

2.   produce all pertinent records at such reasonable times and places as the Insurer shall designate;

3.   fully cooperate with the Insurer or their counsel in all matters pertaining to a loss or claim; and

4.   not take any action which in any way increases the Insurer's exposure under this Policy.

C.   The first named **Insured** may offer a comparison between an **Insured's** inventory records and actual physical count of its inventory to prove the amount of loss, but only where the **Insured** establishes wholly apart from such comparison that it has sustained a covered loss.

## VI.   GENERAL CONDITIONS

### A.   Reliance Upon and Incorporation of Application

In issuing this Policy, the Insurer has relied upon the statements made in the written Application for this Policy and all information provided to the Insurer.  All such statements are the basis of this Policy and shall be incorporated in and constitute part of this Policy.

### B.   Transactions That Impact Coverage

If an **Insured** consolidates or merges with, acquires majority voting rights in or acquires the assets of another entity which results in an increase of the **Insured's** total revenues by more than 25 percent, coverage is provided to such entity if an **Insured**:

1.   gives the Insurer written notice within 90 days from the date of such consolidation,

Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

merger or acquisition; and

2.      pays the Insurer any additional premium required by the Insurer.

Coverage hereunder shall be afforded for loss which is sustained on or after the effective date of the transaction.

**C.      Termination, Cancellation and Nonrenewal**

1.      This Policy shall terminate as to any **Employee** as soon as any **Insured** or any director, trustee, officer, administrator, manager or partner of the **Insured** not in collusion with the **Employee** acquires knowledge of:

(a)      any unlawful taking of **Money, Securities** or **Property**, or other fraudulent or dishonest act committed by such **Employee** during any term of employment with an **Insured**; or

(b)      any fraudulent or dishonest act involving **Money, Securities** or **Property** exceeding $25,000 committed by such **Employee** prior to any term of employment with an **Insured**.

2.      This Policy shall terminate in its entirety upon occurrence of any of the following:

(a)      10 days after the mailing of written notice to the **Insured** from the Insurer in the event of nonpayment of premium; or

(b)      30 days after the mailing of written notice to the **Insured** from the Insurer for any other reason

3.      The notice of cancellation from the Insurer shall state the reason for cancellation. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice shall be equivalent to mailing.

4.      This Policy may be cancelled by the **Insured** by mailing or delivering to the Insurer advance written notice of cancellation. The mailing or delivery of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period.

5.      If this Policy is cancelled, the Insurer shall send the **Insured** any premium refund as soon as practicable.  If the **Insured** cancels, the refund shall be on the customary short rate basis.  The return or tender of a return premium is not a condition precedent to the cancellation becoming effective at the time stated in the cancellation notice.

6.      If the Insurer decides not to renew this Policy, the Insurer shall provide written notice to the **Insured** designated in Item 1. of the Declarations at least 60 days

Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

before the end of the Policy Period. The notice of nonrenewal shall state the reason for nonrenewal.

**D.**     **Liability for Prior Losses**

If the **Insured** or its predecessor in interest, sustained loss during the policy period of any prior insurance policy that was substantially similar to this Policy and could have recovered under that insurance policy except that the time within which to discover loss had expired, the Insurer will pay for it under this Policy provided:

1.     This insurance became effective at the time of cancellation or termination of the prior insurance or insurance subsequent thereto without any interruption in coverage;

2.     The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred; and

3.     The loss is **Discovered** during the **Policy Period**; or during the discovery period described in Clause IV. D. of this Policy.

In no event will coverage be available under this Policy for such loss if such loss is covered under any renewal or replacement of this Policy in whole or in part.

Any coverage provided pursuant to this paragraph VI. E. is part of and not in addition to the Limits of Liability applicable to this Policy and the Insurer's liability shall not exceed the limit of liability under the policy in force at the time such loss was sustained or the applicable Limit of Liability in the Declarations, whichever is less.

In the event that a loss is covered under this Policy and another policy, it is hereby agreed that the applicable Insuring Clause deductible for this Policy shall be reduced by the applicable deductible of the other policy.

**E.**     **First Named Insured's Rights and Obligations**

By acceptance of this Policy, the **Insured** agrees that the first named **Insured** shall act on behalf of all **Insureds** with respect to:

1.     the filing of notice or proof of loss in accordance with Clause V.;

2.     the filing of a claim, adjustment of the amount of loss, receipt or enforcement of payment of a loss;

3.     the payment of premium for, the acceptance of amendments to, or termination of, this Policy; and

4.      the return of any premiums by the Insurer to the **Insured**.

**F.      Other Insurance**

This Policy shall be specifically excess of any other existing valid insurance policy, bond or indemnity that applies to loss also covered hereunder, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise and regardless of whether or not any loss is collectible or recoverable under such other policy, bond or indemnity; provided, however, this provision shall not apply to loss in excess of any deductible and limit of liability of such other policy where the loss is otherwise covered by this Policy.

**G.      Ownership of Property; Interests Covered**

This Policy covers only **Money**, **Securities** or **Property**:

1.      that the **Insured** owns or leases;

2.      that the **Insured** holds for others;

3.      for which the **Insured** is legally liable; or

4.      under Insuring Clause I.G. only;

   (a)      that a **Client** owns or leases;

   (b)      that a **Client** holds for others; or

   (c)      for which a **Client** is legally liable

while the **Money**, **Securities** or **Property** is inside the interior of that portion of any building the **Client** occupies in conducting its business.

However, this Policy is for the **Insured**'s benefit only.  It provides no rights or benefits to any other person or entity.  Any claim for loss that is covered under this Policy must be presented by the **Insured.**

**H.      Territory**

This Policy shall apply to loss of the **Insured** occurring anywhere in the world.

**I.      Valuation and Currency**

In the event of a covered loss of **Money**, **Securities** or **Property**, the Insurer shall pay,

subject to Clause IV. of this Policy:

1.    the least of:

(a)    the face value of **Money**; or

(b)    the United States dollar value of foreign currency based on the rate of exchange published in *The Wall Street Journal* on the day loss involving foreign currency is **Discovered**.

2.    the least of:

(a)    the closing price of **Securities** on the business day immediately preceding the day on which a loss is **Discovered**; or

(b)    the cost of replacing **Securities**; or

(c)    the cost to post a Lost Instrument Bond.

3.    the cost of blank materials, such as blank books, pages or tapes;

4.    the least of:

(a)    the price paid by an **Insured** for the **Property**;

(b)    cash value of the **Property** at the time the loss was sustained; or

(c)    the cost to repair or replace the **Property** with that of similar quality and value at the time an **Insured** complies with Clause V., Notices, Proof of Loss and Legal Proceedings, regarding the furnishing of proof of loss.

**J.**    **Recoveries**

Recoveries, whether effected by the Insurer or by the **Insured**, less the cost of recovery, shall be distributed as follows:

1.    first, to the **Insured** for the amount of loss otherwise covered but in excess of the Limits of Liability;

2.    second, to the Insurer for the amount paid to the **Insured** for covered loss;

3.    third, to the **Insured** for the Deductible; and

4.    fourth, to the **Insured** for loss specifically excluded hereunder.

Recovery from reinsurance or indemnity of the Insurer shall not be deemed a recovery

hereunder.

**K.**    **Subrogation**

In the event of any payment under this Policy, the Insurer shall be subrogated to the extent of such payment to the **Insured's** rights of recovery and the **Insured** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of the **Insured**.

**L.**    **No Action Against the Insurer**

No action shall lie against the Insurer unless, as a condition precedent thereto, there has been full compliance with all the terms of this Policy.  No person or entity shall have any right under this Policy to join the Insurer as a party to any action against the **Insured** to determine the **Insured's** liability, nor shall the Insurer be impleaded by the **Insured** or their legal representatives.

**M.**    **Entire Agreement; Alteration and Assignment of Interest**

The **Insured** agrees that this Policy, including the Declarations, constitutes the entire agreement between the **Insured** and the Insurer or any of their agents or brokers.  No change in, modification of, or assignment of interest under this Policy shall be effective except when made by a written endorsement to this Policy which is issued by the Insurer.  Notice to or knowledge possessed by the Insurer, the **Insured** or any agent, broker or other person acting on behalf of the **Insured** or the Insurer shall not effect a waiver of or stop the Insurer from asserting any rights under this Policy.

**N.**    **Concealment, Misrepresentation or Fraud**

This Policy is void in any case of fraud by the **Insured** as it related to this Policy at any time.  It is also void if the **Insured**, at any time, in the Application or otherwise, intentionally conceals or misrepresents a material fact concerning:

1.    this Policy;

2.    any **Money**, **Securities** or **Property** covered under this Policy;

3.    the **Insured's** interest in any **Money**, **Securities** or **Property** covered under this Policy; or

4.    any claim under this Policy.

**O.**    **Employee Benefit Plan Provisions**

In compliance with certain provisions of ERISA:

1.    If any **Plan** is insured jointly with any other entity under this insurance, the **Insured** or the **Plan** Administrator must select a limit of liability under Insuring Clause I.A. that is sufficient to provide an amount of insurance for each **Plan** that is at least equal to that required if each **Plan** was separately insured.

2.    If the **Insured** first named in the Declarations is an entity other than a **Plan**, any payment the Insurer makes to that **Insured** for loss sustained by any **Plan** will be held by that **Insured** for the use and benefit of the **Plan(s)** sustaining the loss.

3.    If two or more **Plans** are insured under this insurance, any payment the Insurer makes for loss:

    (a)    sustained by two or more plans; or

    (b)    of commingled funds or other property of two or more **Plans**;

    is to be shared by each **Plan** sustaining loss in the proportion that the amount of insurance required for each such **Plan** under ERISA provisions bears to the total of those amounts.

4.    The Deductible applicable to Insuring Clause I.A. does not apply to loss sustained by any **Plan** subject to ERISA which is insured under this insurance.

**P.**    **Records**

The **Insured** must keep records of all **Money, Securities** or **Property** covered under this Policy so the Insurer can verify the amount of any loss.

**Q.**    **Examination of the Insured's Books and Records**

The Insurer may examine and audit the **Insured's** books and records as they relate to this Policy at any time during the **Policy Period** and up to 3 years afterward.

**R.**    **Headings**

The descriptions in the headings and sub-headings of this Policy are solely for convenience and form no part of the terms and conditions of coverage.

**STATE OF MINNESOTA**

**COUNTY OF HENNEPIN**

**DISTRICT COURT**

**FOURTH JUDICIAL DISTRICT**

Case Type: 3B - Other Contracts
Court File No.:

| | |
|---|---|
| The Sherwin-Williams Company, as successor to The Valspar Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Beazley Insurance Company, Inc.,<br><br>Defendant. | **SUMMONS** |

THIS SUMMONS IS DIRECTED TO DEFENDANT AS FOLLOWS:

**Beazley Insurance Company, Inc., 30 Batterson Park Rd., Farmington, CT 06032 and c/o Minnesota Commerce Commissioner, Minnesota Department of Commerce, Consumer Protection and Education Division, 85 7th Place East, Suite 280, Saint Paul, MN 55101**

1.      **YOU ARE BEING SUED**. The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons.  Do not throw these papers away. They are official papers that affect your rights.  You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

2.      **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS**.  You must give or mail to the person who signed this summons **a written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:

Christopher L. Lynch
Barnes & Thornburg LLP
225 South Sixth Street, Suite 2800
Minneapolis, MN 55402

3.      **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given

everything asked for in the Complaint, you must say so in your Answer.

4.      **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint.  If you do not want to contest the claims stated in the complaint, you do not need to respond.  A default judgment can then be entered against you for the relief requested in the complaint.

5.      **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case**.

6.      **ALTERNATIVE DISPUTE RESOLUTION.**  The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice.  You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

**BARNES & THORNBURG LLP**

Dated:  October 2, 2018          By:  _/s/ Christopher L. Lynch_____
                                              Christopher Lynch (#0284154)
                                              225 South Sixth Street, Suite 2800
                                              Minneapolis, MN 55402
                                              T: 612-333-2111
                                              F: 612-333-6798
                                              Email: christopher.lynch@btlaw.com

                                              and

                                              Andrew J. Detherage (*pro hac vice* to be filed)
                                              John P. Fischer (*pro hac vice* to be filed)
                                              11 S. Meridian Street
                                              Indianapolis, IN 46204-3535
                                              T:  317-236-1313
                                              Email: andy.detherage@btlaw.com
                                                      john.fischer@btlaw.com

                                              ***Attorneys for The Sherwin-Williams Company, as successor to The Valspar Corporation***

# ACKNOWLEDGMENT

The party to this pleading by its attorney acknowledges that sanctions may be imposed pursuant to Minn. Stat. § 549.211.

**BARNES & THORNBURG LLP**

Dated:  October 2, 2018                     By:  _/s/ Christopher L. Lynch_____
Christopher Lynch (#0284154)
225 South Sixth Street, Suite 2800
Minneapolis, MN 55402
T: 612-333-2111
F: 612-333-6798
Email: christopher.lynch@btlaw.com

and

Andrew J. Detherage (*pro hac vice* to be filed)
John P. Fischer (*pro hac vice* to be filed)
11 S. Meridian Street
Indianapolis, IN 46204-3535
T:  317-236-1313
Email: andy.detherage@btlaw.com
          john.fischer@btlaw.com

*Attorneys for The Sherwin-Williams Company, as successor to The Valspar Corporation*

DMS 13359787v1

Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

**STATE OF MINNESOTA**                                    **DISTRICT COURT**

**COUNTY OF HENNEPIN**                          **FOURTH JUDICIAL DISTRICT**

Case Type: 3B - Other Contracts
Court File No.:

| | |
|---|---|
| The Sherwin-Williams Company, as successor to The Valspar Corporation, <br><br> Plaintiff, <br><br> v. <br><br> Beazley Insurance Company, Inc., <br><br> Defendant. | **AFFIDAVIT OF COMPLAINCE WITH MINN. STAT. § 45.028** |

CHRISTOPHER L. LYNCH states and declares as follows:

1.      I am a partner with Barnes & Thornburg LLP, and am one of the attorneys representing Plaintiff The Sherwin-Williams Company, as successor to The Valspar Corporation, in the above matter.  I have personal knowledge of the facts asserted herein.

2.      On October 1, 2018, I effected service upon Defendant Beazley Insurance Company, Inc. in compliance with Minn. Stat. § 45.028, subd. 2, by causing a copies of the Summons and Compliant in this action and notice of service of the same to be mailed via certified mail to: (1) the Minnesota Commerce Commissioner; and (2) Beazley Insurance Company, Inc.  Attached here to as **<u>Exhibit 1</u>** is a copy of the service correspondence that was sent to each of those entities.

I DECLARE UNDER PENALTY OF PERJURY THAT EVERYTHING I HAVE STATED IN THIS DOCUMENT IS TRUE AND CORRECT.

Dated: October 1, 2018


 */s/ Christopher L. Lynch*
Christopher L. Lynch

Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

# EXHIBIT A

# BARNES & THORNBURG LLP

225 South Sixth Street, Suite 2800
Minneapolis, MN 55402-4662 U.S.A.
(612) 333-2111
Fax (612) 333-6798

www.btlaw.com

Christopher L. Lynch
612-367-8768
clynch@btlaw.com

October 2, 2018

*VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED*

Beazley Insurance Company, Inc.
Attn:  Christine Oldridge
30 Batterson Park Rd
Farmington, CT 06032

Office of Minnesota Commerce Commissioner
Minnesota Department of Commerce
Consumer Protection and Education Division
85 7th Place East, Suite 280
Saint Paul, MN 55101

## SERVICE OF PROCESS AND
## NOTICE OF SERVICE OF PROCESS
## PURSUANT TO MINN. STAT. §§ 45.028 AND 60A.19

**Re:**   *The Sherwin-Williams Company, as successor to The Valspar Corporation v. Beazley Insurance Company, Inc.*

Dear Sir or Madam:

Enclosed and served upon Beazley Insurance Company, Inc. pursuant to Minn. Stat. §§ 45.028 and 60A.19, please find the following documents:

1.  Summons in the above-titled action; and

2.  Complaint in the above-titled action.

Please contact me if you have any questions.

Best regards,

BARNES & THORNBURG LLP

Christopher L. Lynch

Enc.

Atlanta   Chicago   Dallas   Delaware   Indiana   Los Angeles   Michigan   Minneapolis   Ohio   Washington, D.C.

**STATE OF MINNESOTA**

**COUNTY OF HENNEPIN**

**DISTRICT COURT**

**FOURTH JUDICIAL DISTRICT**

Case Type: 3B - Other Contracts
Court File No.:

| | |
|---|---|
| The Sherwin-Williams Company, as successor to The Valspar Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Beazley Insurance Company, Inc.,<br><br>Defendant. | **SUMMONS** |

THIS SUMMONS IS DIRECTED TO DEFENDANT AS FOLLOWS:

**Beazley Insurance Company, Inc., 30 Batterson Park Rd., Farmington, CT 06032 and c/o Minnesota Commerce Commissioner, Minnesota Department of Commerce, Consumer Protection and Education Division, 85 7th Place East, Suite 280, Saint Paul, MN 55101**

1.      **YOU ARE BEING SUED**. The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons.  Do not throw these papers away. They are official papers that affect your rights.  You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

2.      **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS**.  You must give or mail to the person who signed this summons **a written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:

Christopher L. Lynch
Barnes & Thornburg LLP
225 South Sixth Street, Suite 2800
Minneapolis, MN 55402

3.      **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given

everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint. If you do not want to contest the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case**.

6. **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

**BARNES & THORNBURG LLP**

Dated:  October 2, 2018

By:  _/s/ Christopher L. Lynch_____
Christopher Lynch (#0284154)
225 South Sixth Street, Suite 2800
Minneapolis, MN 55402
T: 612-333-2111
F: 612-333-6798
Email: christopher.lynch@btlaw.com

and

Andrew J. Detherage (*pro hac vice* to be filed)
John P. Fischer (*pro hac vice* to be filed)
11 S. Meridian Street
Indianapolis, IN 46204-3535
T:  317-236-1313
Email: andy.detherage@btlaw.com
        john.fischer@btlaw.com

***Attorneys for The Sherwin-Williams Company, as successor to The Valspar Corporation***

## ACKNOWLEDGMENT

The party to this pleading by its attorney acknowledges that sanctions may be imposed pursuant to Minn. Stat. § 549.211.

**BARNES & THORNBURG LLP**

Dated:  October 2, 2018

By:  _/s/ Christopher L. Lynch_
Christopher Lynch (#0284154)
225 South Sixth Street, Suite 2800
Minneapolis, MN 55402
T: 612-333-2111
F: 612-333-6798
Email: christopher.lynch@btlaw.com

and

Andrew J. Detherage (*pro hac vice* to be filed)
John P. Fischer (*pro hac vice* to be filed)
11 S. Meridian Street
Indianapolis, IN 46204-3535
T:  317-236-1313
Email: andy.detherage@btlaw.com
        john.fischer@btlaw.com

*Attorneys for The Sherwin-Williams Company, as successor to The Valspar Corporation*

**STATE OF MINNESOTA**

**COUNTY OF HENNEPIN**

**DISTRICT COURT**

**FOURTH JUDICIAL DISTRICT**

Case Type: 3B - Other Contracts
Court File No.:

|  |  |
|---|---|
| The Sherwin-Williams Company, as successor to The Valspar Corporation, <br><br> Plaintiff, <br><br> v. <br><br> Beazley Insurance Company, Inc., <br><br> Defendant. | **COMPLAINT** <br><br> **(Jury Trial Demanded)** |

Plaintiff The Sherwin-Williams Company, as successor to The Valspar Corporation ("Valspar"), for its Complaint against Beazley Insurance Company, Inc. ("Beazley"), states and alleges as follows:

## PARTIES

1. At all times relevant to the allegations in this Complaint, Valspar maintained its principal place of business in Minneapolis, Minnesota. Valspar continues to maintain substantial business operations in Minnesota.

2. Beazley is, and at all times relevant to this complaint was, a corporation authorized by the State of Minnesota to do business within the State of Minnesota as an insurer.

## JURISDICTION AND VENUE

3. This Court has personal jurisdiction over Beazley pursuant to Minn. Stat. § 543.19, as Beazley either transacts business within the state, committed an act within the state

that caused injury and damage to Valspar, and/or committed acts outside of the state that caused injury and damage to Valspar in the state.

4.    This Court has subject matter jurisdiction of this action pursuant to Minn. Const., Art. VI, §3 and Minn. Stat. § 484.01.

5.    Venue in Hennepin County is proper under Minn. Stat. § 542.09, because the causes of action alleged herein arose, in whole or in part, in this county.

## FACTUAL BACKGROUND

### A.    The Beazley Policy

6.    For the policy period from April 20, 2016 to April 20, 2017, Beazley issued a "Crime Insurance Policy" to Valspar (the "Beazley Policy").  A true and correct copy of the Beazley Policy is attached as Exhibit 1.

7.    Among other coverages, the Beazley Policy provided coverage to Valspar for "Employee Dishonesty": "The Insurer shall indemnify the Insured . . . for loss of . . . Money, Securities or Property resulting directly from Employee Theft . . . ."

8.    "Employee Theft" is defined in the Beazley Policy as: "the unlawful taking of Money, Securities or Property to the deprivation of an Insured by an Employee, whether identified or not, acting alone or in collusion with others."

### B.    The Employee Theft at Issue, and Beazley's Improper Denial of Coverage

9.    Beginning in approximately 2008, Valspar, through its wholly owned subsidiary, Valspar Sourcing, Inc., engaged AmeriCoats, an Illinois corporation, to provide toll manufacturing services.  A "toll manufacturer" is commonly understood in the industry to mean a company hired by a customer to supply a subset of manufacturing processes on the customer's behalf, using materials and specifications provided by the customer.   Under this toll

- 2 -

manufacturing arrangement, AmeriCoats manufactured and supplied powder coatings for purchase by Valspar, using Valspar's raw materials and specifications.

10.     From approximately February 2013 until approximately April 2017, the former Valspar employee responsible for managing Valspar's business relationship with AmeriCoats was Charles Cunningham.  In that role, Cunningham had the authority to authorize payments to AmeriCoats.   Though Cunningham no longer is employed by Valspar as of this filing, Cunningham was a Valspar employee at all relevant times.

11.     In about April 2017, Valspar received an anonymous message alleging irregularities in Cunningham's relationship with AmeriCoats.

12.     Facts that Valspar discovered regarding the irregularities and provided to Beazley included that Cunningham colluded with an unknown employee or employees of AmeriCoats to overcharge Valspar for the powder coatings supplied by AmeriCoats, and to share in the proceeds of this overcharging scheme.  Valspar based this conclusion on the following findings, among others:

> (a)     discovery of more than 2,000 AmeriCoats invoices that included approximately $3,500,000 in cumulative overcharges for the cost of raw materials, processing fees, or both, but that nonetheless were approved for payment in full by, or at the direction of, Cunningham; and
>
> (b)     Cunningham's receipt of certain benefits from an unknown AmeriCoats employee or employees, including paid travel, golfing, and payments to Cunningham through a company he incorporated for alleged "consulting" services, which benefits Valspar believes were provided as a reward for his participation in the overcharging scheme.

13.     Based on Cunningham's knowledge, experience, and training, he could not have inadvertently or unknowingly approved of invoices that regularly included overcharges; instead, he had to have known about the overcharges, and approved them anyway.

14.     Valspar has not recovered any of the approximately $3,500,000 it unknowingly paid in overcharges to date.

15.     The overcharging scheme uncovered by Valspar's investigation and described above constitutes an "Employee Theft Claim."

16.     The Employee Theft Claim is covered under the "Employee Dishonesty" coverage in the Beazley Policy.   Cunningham's participation in the overcharging scheme constitutes "Employee Theft" as defined in the Beazley Policy, because it is an "unlawful taking of Money . . . to the deprivation of an Insured by an Employee, whether . . . acting alone or in collusion with others."   Accordingly, Valspar is entitled to coverage from Beazley under the "Employee Dishonesty" coverage part in the Beazley Policy, because the "loss of . . . Money" Valspar suffered "result[ed] directly" from this "Employee Theft."   No exclusion, condition, limitation, or other provision precludes coverage for the Employee Theft Claim under the Beazley Policy.

17.     Valspar notified Beazley of the Employee Theft Claim promptly after discovering the overcharging scheme, via an email dated April 21, 2017.   Pursuant to the terms of the Beazley Policy, Valspar supported its claim for coverage through a sworn "Proof of Loss" statement dated October 31, 2017, which set forth facts establishing Valspar's right to coverage under the Beazley Policy.

18.     By letter dated December 19, 2017, Beazley wrongfully denied coverage for the Employee Theft Claim.   Valspar requested that Beazley reconsider its denial of coverage and accept its coverage obligations by letter dated February 14, 2018.  By letter dated April 11, 2018, Beazley confirmed its wrongful denial of coverage, and refused to fulfill its obligations under the Beazley Policy.

## COUNT I – DECLARATORY JUDGMENT

19.    Valspar repeats and realleges the preceding paragraphs of the Complaint as though fully set forth herein.

20.    Beazley has improperly denied its coverage obligations to Valspar under the Beazley Policy for the Employee Theft Claim.

21.    An actual controversy exists between Valspar and Beazley concerning Beazley's coverage obligations to Valspar for the Employee Theft Claim.

22.    Valspar seeks a judgment, pursuant to Minn. Stat. § 555.01, declaring and determining that, under the Beazley Policy, Beazley is obligated to provide coverage to Valspar in full for the Employee Theft Claim in excess of the $250,000 deductible in the Beazley Policy.

WHEREFORE, Valspar prays for relief and judgment in its favor and against Beazley on Count I as follows:

a.    Declaring that, under the Beazley Policy, Beazley is obligated to pay Valspar in full for all covered loss Valspar suffered as a result of the Employee Theft Claim in excess of the $250,000 deductible;

b.    Declaring that Beazley has breached its contractual obligations to Valspar under the Beazley Policy by wrongfully denying coverage for the Employee Theft Claim and by failing to pay Valspar for any of the covered loss Valspar suffered as a result of the Employee Theft Claim;

c.    Declaring that Beazley is obligated to pay Valspar all interest allowed by law, including but not limited to all interest due under Minn. Stat. § 60A.0811, subd. 2;

d.    Declaring that Beazley is obligated to pay all attorney and expert fees and expenses incurred by Valspar in this action that are allowed under applicable law;

e.     Otherwise declaring Valspar's rights and Beazley's obligations under the Beazley Policy and applicable law; and

f.     Declaring that Beazley is obligated to pay or provide to Valspar all other and further relief that the Court considers just, appropriate, necessary, or proper.

## COUNT II — BREACH OF CONTRACT

23.     Valspar repeats and realleges the preceding paragraphs of the Complaint as though fully set forth herein.

24.     Valspar has complied with the terms, conditions, and other requirements of the Beazley Policy, and Beazley was required to fulfill its coverage obligations under the Beazley Policy.

25.     Beazley has breached its contractual obligations under the Beazley Policy and applicable law by wrongfully denying its coverage obligations to Valspar for the Employee Theft Claim, and by refusing to cover Valspar's loss in excess of the $250,000 deductible, without justification.

26.     As a result of Beazley's breach of its obligations under Beazley Policy, Valspar has suffered damages in excess of $50,000.

WHEREFORE, Valspar prays for relief and judgment in its favor and against Beazley on Count II as follows:

a.     Awarding to Valspar all of the damages resulting from Beazley's breaches of contract;

b.     Awarding Valspar's costs of suit herein;

c.     Awarding Valspar all attorney and expert fees and expenses incurred by Valspar in this action that are allowed under applicable law;

d.      Awarding Valspar all interest allowed by law, including but not limited to all interest due under Minn. Stat. § 60A.0811, subd. 2; and

e.      Awarding Valspar all other and further relief that the Court deems just, appropriate, necessary or proper.

## **JURY DEMAND**

Valspar demands a jury on all issues so triable.

Respectfully submitted,

**BARNES & THORNBURG LLP**

Dated:  October 2, 2018          By*:   /s/ Christopher L. Lynch*
                                Christopher Lynch (#0284154)
                                225 South Sixth Street, Suite 2800
                                Minneapolis, MN 55402
                                T: 612-333-2111
                                F: 612-333-6798
                                Email: christopher.lynch@btlaw.com

                                and

                                Andrew J. Detherage (*pro hac vice* to be filed)
                                John P. Fischer (*pro hac vice* to be filed)
                                11 S. Meridian Street
                                Indianapolis, IN 46204-3535
                                T:  317-236-1313
                                Email: andy.detherage@btlaw.com
                                        john.fischer@btlaw.com

                                ***Attorneys for The Sherwin-Williams Company, as successor to The Valspar Corporation***

## ACKNOWLEDGMENT

The undersigned hereby acknowledge that sanctions may be awarded to the opposing party pursuant to Minn. Stat. §549.211.

**BARNES & THORNBURG LLP**

Dated:  October 2, 2018            By:*/s/ Christopher L. Lynch*
                    Christopher Lynch (#0284154)
                    225 South Sixth Street, Suite 2800
                    Minneapolis, MN 55402
                    T:  612-333-2111
                    F: 612-333-6798
                    Email:    christopher.lynch@btlaw.com
                    and

                    Andrew J. Detherage (*pro hac vice* to be filed)
                    John P. Fischer (*pro hac vice* to be filed)
                    11 S. Meridian Street
                    Indianapolis, IN 46204-3535
                    T:  317-236-1313
                    Email:    andy.detherage@btlaw.com
                         john.fischer@btlaw.com

                    *Attorneys for The Sherwin-Williams Company, as successor to The Valspar Corporation*

DMS 12933303v1

Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

# Exhibit 1



**DECLARATIONS**
**CRIME INSURANCE POLICY**

These Declarations along with the completed and signed Application and the Policy with endorsements shall constitute the contract between the **Insureds** and the Insurer.

Insurer:     Beazley Insurance Company, Inc.

Policy Number: ███████0501

Item 1.     Insured: The Valspar Corporation

Address: P.O. Box 1461
Minneapolis, MN  55440

Item 2.     **Policy Period**:

From: 20-Apr-2016

To:     20-Apr-2017

Both dates at 12:01 a.m. Local Time at the Address stated in Item 1.

| | | Item 3: Limit of Liability | Item 4: Deductible |
|---|---|---|---|
| Insuring Clause A: | Employee Dishonesty | $20,000,000 each loss | $250,000 each loss |
| Insuring Clause B: | Forgery or Alteration | $20,000,000 each loss | $250,000 each loss |
| Insuring Clause C: | On Premises | $20,000,000 each loss | $250,000 each loss |
| Insuring Clause D: | In Transit | $20,000,000 each loss | $250,000 each loss |
| Insuring Clause E: | Money Orders and Counterfeit Paper Currency Fraud | $20,000,000 each loss | $1,000 each loss |
| Insuring Clause F: | Computer Fraud and **Funds Transfer Fraud** | $20,000,000 each loss | $250,000 each loss |
| Insuring Clause G: | Client Property Coverage | $20,000,000 each loss | $250,000 each loss |
| Insuring Clause H: | Credit Card Coverage | $20,000,000 each loss | $1,000 each loss |
| Insuring Clause I: | Expense Coverage Aggregate | $50,000 aggregate for the **policy period** | No deductible shall apply to Insuring Clause I. |

If "Not Covered" is listed opposite any Insuring Clause above, there shall be no coverage under such Insuring Clause under this Policy and any references thereto in the Policy shall be deemed deleted.

No Deductible shall apply to any loss involving any **Plan**.

Item 5.       Premium: $52,031

Item 6.       Notice of Insurer:

    a.  Notice Of Claim(s) To Be Sent To:

        Beth Diamond
        1270 Avenue of the Americas
        Suite 1200
        New York, NY 10020
        Tel: +1 (646) 943 5900
        Fax: +1 (646) 378 4039
        Beth.diamond@beazley.com

    b.  All other notices:

        Beazley USA Services, Inc.
        30 Batterson Park Road
        Farmington, CT 06032
        Tel: (860) 677 3700
        Fax: (860) 679 0247

Item 7.       Endorsements Effective At Inception:

| | | |
|---|---|---|
| 1. | E03337 112011 ed. | Delete Exclusion A.20. (Correction Endorsement) |
| 2. | A00576MN 042011 ed. | Minnesota Amendatory Endorsement |
| 3. | E02804 032011 ed. | Sanction Limitation and Exclusion Clause |
| 4. | BICMU05070406 | War and Civil War Exclusion |
| 5. | E02882 032012 ed. | Amend Cancellation Notification |
| 6. | E00387 032012 ed. | Amend Definition H. |
| 7. | E03384 112011 ed. | Amend Definition of Employee to Include Students and Employees on Military Leave |
| 8. | E03396 112011 ed. | Amend Definition of Subsidiary to Include Joint Ventures |
| 9. | E03500 012012 ed. | Amend Notice of Loss |
| 10. | BICCR05320807 | Amend Terminated Employee to 90 Days |
| 11. | BICCR05230407 | Counterfeit Currency of any Country |
| 12. | BICCR05090606 | Independent Contractor Endorsement |
| 13. | E07438 012016 ed. | Loss Discovered Conversion |
| 14. | E03394 112011 ed. | Tax Compensation Endorsement |
| 15. | E04633 042013 ed. | Diminution of Deductible Endorsement |
| 16. | E06749 022015 ed. | ERISA Endorsement |

Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

17. E06801 032015 ed.        Fraudulent Instruction Coverage

The Insurer has caused this Policy to be signed and attested by its authorized officers, but it shall not be valid unless also signed by another duly authorized representative of the Insurer.

_____
Authorized Representative

14-Apr-2016_____
Date

_____
Secretary

_____
President

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ▮▮▮▮▮▮▮0501
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## DELETE EXCLUSION A.20. (CORRECTION ENDORSEMENT)

This endorsement modifies insurance provided under the following:


**CRIME INSURANCE**


In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause III. Exclusion A.20 is deleted in its entirety.


All other terms and conditions of this Policy remain unchanged.


_____
Authorized Representative

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ███████0501
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## MINNESOTA AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE POLICY**

1.  Clause **VI. Termination, Cancellation and Nonrenewal** C.2 and 3 are deleted and replaced with the following:

2.  If this Policy has been in effect for less than ninety (90) days and is not a renewal Policy, the Insurer may cancel this Policy for any reason by mailing via first class mail or delivering to the **Insured**, written notice of cancellation stating when, not less than sixty (60) days thereafter, such cancellation shall be effective. However, if the reason for cancellation is nonpayment of premium, the Insurer may cancel this Policy for any reason by mailing via first class mail or delivering to the **Insured** written notice of cancellation stating when, not less than ten (10) days thereafter such cancellation shall be effective.

    If this Policy has been in effect for at least ninety (90) days or more or is a renewal Policy, the Insurer may cancel this Policy only for the following reasons:

    (1) nonpayment of premium;

    (2) misrepresentation or fraud made by or with the knowledge of the **Insured** in obtaining the policy or in pursuing a claim under the policy;

    (3) actions by the **Insured** that have substantially increased or substantially changed the risk insured;

    (4) refusal of the **Insured** to eliminate known conditions that increase the potential for loss after notification by the insurer that the condition must be removed;

    (5) substantial change in the risk assumed, except to the extent that the Insurer should reasonably have foreseen the change or contemplated the risk in writing the contract;

    (6) loss of reinsurance by the Insurer which provided coverage to the Insurer for a significant amount of the underlying risk insured; or

    (7) a determination by the commissioner that the continuation of the Policy could place the insurer in violation of the insurance laws of this state.

    If the Insurer cancels this Policy for any of the reasons set forth in 2. through 7. above, the Insurer shall mail via first class mail  or deliver written notice to the named **Insured** at least sixty (60) days before the effective date of cancellation. If the Insurer cancels this Policy for the reason set forth in 1. above, the Insurer shall mail via first class mail or deliver written notice to the named **Insured** at least ten (10) days prior to the effective date of cancellation.

3.  The notice of cancellation for any of the reasons above shall be mailed to the **Insured** at their last known address, and to the **Insured's** agent of record, if any.  A notice of cancellation

shall state the reason for cancellation.  Notice by first class mail is effective upon deposit in the United States mail. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**.

2.    Clause **VI. Termination, Cancellation and Nonrenewal** C. 6. is amended to add the following:

6. If written notice of nonrenewal is not given at least sixty (60) days before the date of expiration of the Policy, the Policy shall continue in force until sixty (60) days after a notice of intent not to renew is received by the **Insured**.

Written notice of nonrenewal shall be mailed via first-class mail to the **Insured.**  Notice by first class mail is effective upon deposit in the United States mail. The mailing of such notice shall be sufficient notice and the effective date of nonrenewal stated in the notice shall become the end of the **Policy Period**.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number: ██████0501**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## <u>SANCTION LIMITATION AND EXCLUSION CLAUSE</u>

This endorsement modifies insurance provided under the following:

## CRIME INSURANCE POLICY

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, law or regulations of the European Union, United Kingdom or United States of America.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ▮▮▮▮▮▮▮**0501**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### WAR AND CIVIL WAR EXCLUSION

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE POLICY**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that notwithstanding anything to the contrary contained herein this Policy does not cover loss or damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilies (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ████████**0501**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## AMEND CANCELLATION NOTIFICATION

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE POLICY**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause VI. General Conditions, C.2.(b) is amended to change the notice period for Insurer initiated cancellations to 90 days for all allowable reasons other than nonpayment of premium.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ▮▮▮▮▮**0501**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

### AMEND DEFINITION H.

This endorsement modifies insurance provided under the following:

### CRIME INSURANCE POLICY

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause II.
**DEFINITIONS** H. is deleted and replaced with the following:

H.     **"Discovery"** or **"Discovered"** means the moment when the the risk management department or
the office of the general counsel of the **Insured** first becomes aware of facts which would cause
a reasonable person to believe that a loss covered by this Policy has been or will be incurred,
even though the exact amount or details of loss may not then be known.  This includes loss:

1.     sustained prior to the coverage inception date shown in Item 2. of the Declarations; or

2.     which does not exceed the Deductible shown in Item 4. of the Declarations.

**"Discovery"** or "**Discovered**" also includes the **Insured's** receipt of notice of an actual or
potential claim against the **Insured** alleging facts that if true would constitute a covered loss
under this Policy.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ▮▮▮▮▮▮**0501**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## AMEND DEFINITION OF EMPLOYEE TO INCLUDE STUDENTS AND EMPLOYEES ON MILITARY LEAVE

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause II. Definitions I., "Employee" is amended by the addition of the following:

    5.      students and/or interns gaining work experience;

    6.      employees on leave of absence or military leave of absence;

but solely while such individuals are performing acts within the scope of the usual duties of an employee for or on behalf of the insured, and while under the supervision, direction and control of the Insured.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E03384
112011 ed.

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ████████0501
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## AMEND DEFINITION OF SUBSIDIARY TO INCLUDE JOINT VENTURES

This endorsement modifies insurance provided under the following:

## CRIME INSURANCE

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause II. Definitions BB. "Subsidiary" is amended to include participation in a Joint Venture, but only to the extent of the **Insured's** ownership interest, unless

1   The **Insured** has the largest ownership of any Joint Venture partner and

2   The **Insured** is contractually obligated to manage and supervise the operation and

3   The **Insured's** policies and procedures are established and adhered to for operation of the Joint Venture.

If all three conditions apply, then the Joint Venture will be covered 100%.

It is further understood that if the respective Joint Venture has other valid or collectible insurance, then this Policy shall apply as excess to that other valid and collectible insurance but only to the extent of the Insured's ownership interest.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ⬛⬛⬛⬛**0501**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### AMEND NOTICE OF LOSS

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE POLICY**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that the first paragraph of Section V. NOTICES, PROOF OF LOSS AND LEGAL PROCEEDINGS is deleted in its entirety and replaced with the following:

It is a condition precedent to coverage hereunder that, upon **Discovery** of loss or an occurrence which may result in a covered loss which exceeds or is likely to exceed 35% of the applicable Deductible Amount, the first named **Insured** shall comply with A., B. and C. below.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ▉▉▉▉▉**0501**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## AMEND TERMINATED EMPLOYEE TO 90 DAYS

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE POLICY**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause II. Definitions I.1.(a) is deleted and replaced with the following:

(a)     while in the regular service of the **Insured** in the ordinary course of its business or for 90 days after termination of service;

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ▮▮▮▮▮▮▮0501
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the
"Underwriters"**

## COUNTERFEIT CURRENCY OF ANY COUNTRY

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause I.
Insuring Clauses E. 2. is deleted and replaced with:

2.  counterfeit paper currency of any country that is acquired in the regular course of business from a
    **Third Party**.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ████████0501
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### INDEPENDENT CONTRACTOR ENDORSEMENT

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE POLICY**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.     Clause II. Definitions I. "**Employee**" is amended to include any independent contractor placed by any **Insured** at a **Client's** location while in the regular service of the **Insured** in the ordinary course of the **Insured's** business whose services are at the exclusive direction of the **Insured** pursuant to a written contract.

2.     Clause III. Exclusions B.1. shall not apply to any independent contractor as described in paragraph 1. above.

3.     The Deductible applicable to loss caused by an independent contractor as described in paragraph 1. above under Insuring Clause I.A. shall be $250,000 which shall be deemed to be the deductible in Item 4. of the Declarations.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ███████0501
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**LOSS DISCOVERED CONVERSION**</u>

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.      Clause III. Exclusions F. is deleted and replaced with:

   F.      Subject to Clause VI.D of this Policy, no coverage will be available under this Policy for loss or damage unless:

      1.      **Discovered** during the **Policy Period**; or

      2.      **Discovered** during the discovery period described in Clause IV.D. of this Policy.

      In no event will coverage be available under this Policy for such loss if such loss is covered under any renewal or replacement of this Policy in whole or in part.

2.      Clause IV. Limits of Liability, Non-Accumulation of Liability, Deductible, Discovery Period D. is deleted and replaced with:

   **D.      Discovery**

      Subject to Clause VI. D. of this Policy, this Policy only applies to loss which is **Discovered** during the **Policy Period**.

      **Loss** is covered under this Policy only if **Discovered** no later than 60 days from the end of the **Policy Period** (such 60 day period is the "discovery period"). At any time prior to the termination of this Policy, the **Insured** may give written notice to the Insurer requesting an extension of the discovery period for loss under this Policy to 12 months from the end of the **Policy Period** and shall pay an additional premium to be determined by the Insurer in its sole discretion. The discovery period terminates immediately upon the inception date of any other insurance obtained by the **Insured** replacing in whole or in part the insurance afforded hereunder whether or not such other insurance provides coverage for loss sustained prior to its effective date. There shall be no coverage under this Policy for loss sustained during the discovery period or extended discovery period. In all events, the 12 month extension will not be available if this Policy is cancelled as provided in Clause VI.C.2.(a).

3.      Clause VI. General Conditions D. is amended to include:

   Coverage will be available for loss sustained at any time and **Discovered** during the **Policy Period**, provided that coverage for loss sustained prior to the effective date of this **Policy Period**, or the effective date of coverage for any additional **Insureds**, or the effective date of any coverage added by endorsement, is subject to the following:

A.   if an **Insured** or some predecessor in interest of such **Insured** carried a prior bond or policy which afforded coverage for a loss sustained during the period of such prior bond or policy and such prior bond or policy was not issued by the Insurer or its affiliates and such loss was first **Discovered** by an **Insured** prior to the expiration of the time allowed for discovery under the last such policy, then no coverage shall be available under this Policy, unless the total amount of covered loss exceeds the limit of liability of the last such bond or policy carried by the Insured or predecessor in interest of such **Insured**, and the Company's Limit of Liability for any such loss will be in excess of the limit of liability of the last bond or policy subject to all of the terms and conditions of this Policy; or

B.   if an **Insured** or some predecessor in interest of such **Insured** carried a prior bond or policy which afforded coverage for a loss sustained during the period of such prior bond or policy and such prior bond or policy was issued by the Insurer or its affiliates then such prior bond or policy shall terminate as of the inception of this Policy and such prior bond or policy shall not cover any loss not discovered and noticed to the Insurer prior to the inception of this Policy then the Insurer's Limit of Liability for such loss shall be the applicable Limit of Liability shown on the Declarations of this Policy.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number: ▮▮▮▮▮0501**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## TAX COMPENSATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.      The Insurer shall adjust the amount of any loss paid in the United States to compensate for additional federal or state tax liability incurred by the **Insured** as a result of the payment of such loss in the United States rather than in the country in which such loss was sustained, provided that:

   A.      The loss was sustained by an entity not subject to United States or state tax provisions; and

   B.      The payment for such loss is reportable income under the Internal Revenue Code and Regulations or the tax laws of any state or commonwealth of the United States.

   **Loss Payment** shall be adjusted using the following formula:

$$\text{\textbf{Final Payment} equals \textbf{Loss Payment}} \times \frac{\text{One minus the \textbf{Marginal Foreign Tax Rate}}}{\text{One minus the \textbf{Marginal U.S. and State Tax Rate}}}$$

2.      Solely for the purposes of this endorsement, clause II. Definitions is amended by the addition of the following:

   **"Final Payment"** means the amount paid after tax adjustment.

   **"Loss Payment"** means the amount to be paid prior to tax adjustment.

   **"Marginal Foreign Tax Rate"** means the marginal rate of income taxation of the Insured entity sustaining the loss during the local tax year in which such loss is written off.

   **"Marginal U.S. and State Tax Rate"** means the marginal rate of Federal and State income taxation of the **Insured**, in the United States, of the loss payment for the tax year in which such loss is to be made.

27-CV-18-16565

CASE 0:18-cv-02964-DWF-DTS    Document 1-1    Filed 10/19/18    Page 98 of 122    Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ████████0501
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## DIMINUTION OF DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

## CRIME INSURANCE POLICY

In consideration of the premium charged for the Policy, it is hereby understood and agreed that, with respect to a loss for which coverage is provide by this policy and which is sustained partly during the period of other policies providing coverage for such loss issued to the **Insured** or to any predecessor in interest of the **Insured** and terminated or cancelled or allowed to expire as of the inception date of this policy, the amount of the deductible that is applicable to the portion of the loss sustained during this policy period shall be reduced, in whole or in part, by:

1. The amount of the loss which is sustained by the **Insured** during the period of other polices if such loss is less than the amount of the deductible applicable to that loss under these other polices, or

2. The amount of the deductible applicable to the loss sustained by the **Insured** during the period of the other polices if the applicable deductible is less than the amount of the loss sustained during that period.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E04633
042013 ed.

Page 1 of 1

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ████████ **0501**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### ERISA ENDORSEMENT

This endorsement modifies insurance provided under the following:

## CRIME INSURANCE

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.   Insuring Clause A. Employee Dishonesty is deleted in its entirety and replaced with the following:

      A.  **EMPLOYEE DISHONESTY**

           The Insurer shall indemnify the **Insured** for:

           1.     loss of or damage to **Money**, **Securities** or **Property** resulting directly from **Employee Theft** or **Employee Forgery**, and

           2.     loss of **Money**, **Securities** or **Property** sustained by an **ERISA Plan** resulting from a **Fraudulent or Dishonest Act** committed by an **Employee** acting alone or in collusion with others.

2.   Solely with respect to loss sustained by an **ERISA Plan**, Clause IV., paragraph D. is amended by the addition of:

      Loss for **Plan** assets is covered under this Policy only if **Discovered** no later than twelve (12) months from the end of the **Policy Period**, as required under ERISA.

3.   Clause II. Definitions, paragraph U. "**Plan**" is deleted in its entirety and replaced with the following:

      U.  **"ERISA Plan"** means any Employee Benefit Plan, Pension Benefit Plan, or Welfare Benefit Plan, defined and required to be bonded under Title 1 of the Employee Retirement Income Security Act of 1974, as amended, which is operated solely by an Organization or jointly by an Organization and a labor organization for the benefit of **Employees** and which existed on or before the inception of this Policy or which is created or acquired after the inception of this Policy.

4.   For purposes of this Endorsement, all references to "**Plan**" in this Policy are deleted and replaced with **"ERISA Plan"**.

5.   Clause II. Definitions is amended by the addition of:

      "**Fraudulent or Dishonest Act**" shall be defined as having the meaning set forth in Title 29, Code of Federal Regulations, Section 2580.412-9, as amended.

6.   Clause III. Exclusions, paragraphs 7. and 8. are deleted in their entirety and replaced with the following:

      7.     the authorized or unauthorized trading of **Money, Securities** or **Property**, whether or not in the name of the **Insured** and whether or not in a genuine or fictitious account; provided however, that this exclusion does not apply to direct losses caused by **Employee Theft** that results in improper financial gain to such **Employee**; provided further that salary, commissions, fees or other emoluments, including but not limited to promotions and raises associated with employment, paid by the **Insured** to such **Employee**, shall not constitute improper financial gain, provided this exclusion does not apply to loss of **Money**, **Securities** or **Property** sustained by an **ERISA Plan** resulting from a

Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

**Fraudulent or Dishonest Act** committed by an **Employee** acting alone or in collusion with others;

8.      loss of trade secrets, confidential processing methods, confidential information, patents, copyrights, trademarks or intangible or intellectual property of any kind, provided this exclusion does not apply to loss of **Money**, **Securities** or **Property** sustained by an **ERISA PLAN** resulting from a **Fraudulent or Dishonest Act** committed by an **Employee** acting alone or in collusion with others;

7.    Solely with respect to loss sustained by an **ERISA Plan,** payment by the Insurer for covered loss shall be to the **ERISA Plan** sustaining such loss. If such payment is in excess of the amount of coverage required by ERISA for any such **ERISA Plan(s)**, such excess shall be held for the use and benefit of any other named **ERISA Plan(s)** should such **ERISA Plan(s)** also discover loss recoverable hereunder.

With respect to any **ERISA Plan(s)**:

1.      if covered loss is sustained by any **ERISA Plan** which does not have any employer securities, the Limit of Liability applicable to such covered loss shall be the lesser of ten percent (10%) of the **ERISA Plan's** funds handled as of the beginning of such **ERISA Plan's fiscal** year or five hundred thousand dollars ($500,000); or

2.      if covered loss is sustained by any **ERISA Plan** which does have any employer securities, the Limit of Liability applicable to such covered loss shall be the lesser of ten percent (10%) of the **ERISA Plan's** funds handled as of the beginning of such **ERISA Plan's** fiscal year or one million ($1,000,000);

provided that, in all events:

(a)     if the applicable Limit of Liability as set forth in the Declarations is less than the amounts set forth in paragraphs 1. or 2. above, then the applicable Limit of Liability shall be amended to the respective amounts set forth in paragraphs 1. or 2. above; or

(b)     if the applicable Limit of Liability as set forth in the Declarations equals or exceeds the amounts set forth in paragraphs 1. or 2. above, then the applicable Limit of Liability shall be the Limit of Liability as set forth in the Declarations applicable to this coverage section.

All other terms and conditions of this Policy remain unchanged.

_____

Authorized Representative

**Effective date of this Endorsement: 20-Apr-2016**
**This Endorsement is attached to and forms a part of Policy Number:** ▮▮▮▮▮▮**0501**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## FRAUDULENT INSTRUCTION COVERAGE

This endorsement modifies insurance provided under the following:

**CRIME INSURANCE POLICY**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.    Clause I. Insuring Clauses is amended by the addition of:

    **FI.**   **FRAUDULENT INSTRUCTION**

The Insurer shall indemnify the first named **Insured** for loss resulting directly from an **Insured** having transferred, paid, or delivered any **Money** or **Securities** as a direct result of **Fraudulent Instructions** provided by a person purporting to be a **Vendor**, **Client**, or an **Authorized Employee**.

2.    Clause II. Definitions is amended by the addition of:

**"Authorized Employee"** means an **Employee** who is authorized by the **Insured** to transfer **Money** or **Securities** or to instruct other **Employees** to transfer **Money** or **Securities**.

**"Fraudulent Instructions"** means a fraudulent written instruction, electronic instruction (including email or web-based instruction) or telephone instruction that is intended to mislead an **Insured** through the misrepresentation of a material fact that is relied upon in good faith by such **Insured**.

**"Out-of-Band Authentication"** means a method of challenge and response to the requestor of a transfer, payment or delivery of **Money** or **Securities** by an **Insured**, via a method other than the original means of request, to verify the authenticity or validity of the request.

**"Vendor"** means any entity or natural person that provides goods or services to the **Insured** pursuant to a written agreement.

3.    The Insurer shall not be liable under this Policy for any loss or damage sustained by any **Insured** that results from or arises out of, directly or indirectly, any actual or purported instruction to transfer **Money, Securities, Property, Merchandise, Data** or any other item or information; provided that this exclusion shall not apply to loss to which Insuring Clause I.FI. applies.

4.    All losses arising out of or resulting from the same **Fraudulent Instruction**, multiple or a series of **Fraudulent Instructions** purporting to be from the same **Vendor, Client** or **Authorized Employee** or related **Vendors**, **Clients** or **Authorized Employees**, or multiple or a series of **Fraudulent Instructions** from the same **Third Party** or related **Third Parties** shall be deemed a single loss under this Policy subject to the each loss limit set forth in Section 6. of this Endorsement.

5.    Clause III. Exclusions is amended by the addition of:

    **FI.**   The Insurer shall not be liable under Insuring Clause I.FI. for loss or damage arising out of or resulting from, either directly or indirectly:

1. the actual or alleged use of credit, debit, charge, access, convenience, customer identification or other cards;

2. any transfer of money, goods, information or other item involving any person or entity that had authorized access to the **Insured's** authentication mechanism;

3. the processing of, or the failure to process, credit, check, debit, personal identification number debit, electronic benefit transfers or mobile payments for merchant accounts; or

4. any **Fraudulent Instruction** that was not verified with the requestor using an Out-of-Band Authentication.

6. Items 3. and 4. of the Declarations are amended by the addition of:

| | | Item 3: Limit of Liability | Item 4: Deductible |
|---|---|---|---|
| Insuring Clause FI: | Fraudulent Instruction Coverage | $100,000 each loss | $250,000 each loss |

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

Filed in District Court
State of Minnesota
10/2/2018 2:27 PM



**CRIME INSURANCE POLICY**

In consideration of payment of the premium and in reliance on all statements made in the Application for this Policy and all information provided to the Insurer and subject to all the provisions of this Policy, the Insurer and the first named **Insured** on behalf of all **Insureds** agree:

**I.      INSURING CLAUSES**

**A.      EMPLOYEE DISHONESTY**

The Insurer shall indemnify the **Insured** or any **Plan** for loss of or damage to **Money**, **Securities** or **Property** resulting directly from **Employee Theft** or **Employee Forgery**.

**B.      FORGERY OR ALTERATION**

The Insurer shall indemnify the **Insured** for loss resulting directly from **Forgery** or alteration by a **Third Party** of any checks, drafts, promissory notes or similar written promises, orders or directions to pay a sum certain in **Money** that are:

1.      made or drawn by or upon the **Insured** or that are purported to have been so made or drawn; or

2.      made or drawn by one acting as the **Insured's** agent or that are purported to have been so made or drawn.

**C.      ON PREMISES**

The Insurer shall indemnify the **Insured** for loss resulting directly from:

1.      **Robbery, Safe Burglary** or **Theft** committed solely by a **Third Party** of **Money, Securities** or **Property** within the **Premises** or **Banking Premises**;

2.      physical destruction, misplacement or mysterious unexplainable disappearance of **Money, Securities** or **Property** from the **Premises**;

3.      loss of or damage to **Property** within the **Premises** resulting from an actual or attempted **Robbery, Safe Burglary** or **Theft** committed solely by a **Third Party**;

4.      damage to the **Premises** or its exterior resulting from an actual or attempted **Robbery, Safe Burglary** or **Theft** committed solely by a **Third Party** but only to the extent that the **Insured** is the owner of the **Premises** or is liable for such damage; or

5.      loss of or damage to a locked safe, vault, cash box, cash register or cash drawer within the **Premises** resulting from an actual or attempted **Robbery**, **Safe Burglary**

27-CV-18-16565

CASE 0:18-cv-02964-DWF-DTS   Document 1-1   Filed 10/19/18   Page 105 of 122   Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

or **Theft** committed solely by a **Third Party**.

**D.    IN TRANSIT**

The Insurer shall indemnify the **Insured** for loss resulting directly from:

1.    **Robbery** or **Theft** committed solely by a **Third Party** of **Money** or **Securities** while outside the **Premises** or **Banking Premises** in the care and custody of a **Messenger** or armored motor vehicle company or while temporarily within the living quarters of the **Messenger**;

2.    physical destruction, misplacement or mysterious unexplainable disappearance of **Money** or **Securities** while outside the **Premises** or **Banking Premises** in the care and custody of a **Messenger** or armored motor vehicle company or while temporarily within the living quarters of the **Messenger**; or

3.    damage from an actual or attempted **Robbery** or **Theft** committed solely by a **Third Party** to the **Insured's Property** while outside the **Premises** or **Banking Premises** in the care and custody of a **Messenger** or armored motor vehicle company or while temporarily within the living quarters of the **Messenger**.

**E.    MONEY ORDERS AND COUNTERFEIT PAPER CURRENCY FRAUD**

The Insurer shall indemnify the **Insured** for loss resulting directly from the **Insured's** acceptance in good faith, in exchange for **Merchandise, Money** or services of:

1.    any money order issued or purporting to have been issued by any post office, express company or bank, if such money order is not paid upon presentation; or

2.    counterfeit United States or Canadian paper currency that is acquired in the regular course of business from a **Third Party**.

**F.    COMPUTER FRAUD AND FUNDS TRANSFER FRAUD**

The Insurer shall indemnify the **Insured** for:

1.    loss of or damage to **Money, Securities** or **Property** resulting directly from **Computer Fraud** committed solely by a **Third Party**; or

2.    loss of **Money** or **Securities** contained in a **Transfer Account** at a **Financial Institution** resulting directly from **Funds Transfer Fraud** committed solely by a **Third Party**.

**G.    CLIENT PROPERTY COVERAGE**

The Insurer shall indemnify for loss of or damage to **Money**, **Securities** or **Property**

27-CV-18-16565

CASE 0:18-cv-02964-DWF-DTS   Document 1-1   Filed 10/19/18   Page 106 of 122   Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

sustained by a **Client** resulting directly from **Theft** or **Forgery** committed by an identified **Employee** not in collusion with the **Client** or any agent or employee of the **Client**, but only to the extent the **Insured** is legally liable to the **Client** for such loss.

**H.    CREDIT CARD COVERAGE**

The Insurer shall indemnify the **Insured** for loss resulting directly from **Credit Card Fraud**.

**I.    EXPENSE COVERAGE**

The Insurer shall indemnify the **Insured** for **Expenses** incurred by the **Insured** and that results from any direct loss covered hereunder.

**II.    DEFINITIONS**

The following terms whenever used in this Policy in boldface type shall have the meanings indicated.

A.    **"Banking Premises"** means the interior of that portion of any building occupied by a banking institution or similar safe depository institution, including any night depository chute or safe maintained by the institution.

B.    **"Client"** means a customer of the **Insured** to whom the **Insured** provides goods or services under a written contract or for a fee.

C.    **"Computer Fraud"** means the **Theft** of **Money, Securities** or **Merchandise** by a **Third Party**, through the use of any **Computer System**.

D.    **"Computer System"** means a computer or computer network including input, output, processing, storage and communication facilities and shall include off-line media libraries.

E.    **"Computer Violation"** means an intentional, unauthorized and malicious:

1.    entry of **Data** into a **Computer System**;

2.    change to date elements or program logic which is kept in machine readable format; or

3.    introduction of instructions, programmatic or otherwise, which propagate themselves through a **Computer System**.

F.    **"Credit Card Fraud"** means **Forgery** or alteration of, on or in, any written instrument required in connection with any credit, debit or access card issued to the **Insured** or at the request of the **Insured**, for business purposes of the **Insured**, to any **Employee** of the **Insured**; provided such **Forgery** or alteration is committed by a **Third Party**.

Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

G.  **"Data"** means information contained in manuscripts, records, accounts, microfilms, tapes or other records, whether or not contained in a **Computer System**.

H.  **"Discovery"** or "**Discovered**" means the moment when the **Insured** or any director, trustee, officer, administrator, manager, partner or insurance representative of the **Insured** first becomes aware of facts which would cause a reasonable person to believe that a loss covered by this Policy has been or will be incurred, even though the exact amount or details of loss may not then be known.  This includes loss:

1.  sustained prior to the coverage inception date shown in Item 2. of the Declarations; or

2.  which does not exceed the Deductible shown in Item 4. of the Declarations.

**"Discovery"** or "**Discovered**" also includes the **Insured's** receipt of notice of an actual or potential claim against the **Insured** alleging facts that if true would constitute a covered loss under this Policy.

I.  **"Employee"** means:

1.  a natural person:

    (a)  while in the regular service of the **Insured** in the ordinary course of its business or for 30 days after termination of service;

    (b)  whom the **Insured** has the right to direct and control while performing labor or service for the **Insured** whether such labor or service is on a part-time, temporary, seasonal or full-time basis; and

    (c)  who is compensated directly by the **Insured** through salary, wages or commissions;

2.  a natural person who is a volunteer or leased **Employee** directed and controlled by the **Insured** while performing labor or service for the **Insured** pursuant to a lease or other written contract to which the **Insured** is a party;

3.  a natural person who is a director, trustee, officer, administrator, manager or partner of the **Insured,** when performing acts coming within the scope of the usual duties of an **Employee**; or

4.  a natural person who is a trustee, officer, employee, administrator, fiduciary or manager of any **Plan** or any other natural person who is required to be bonded by Title 1 of the Employee Retirement Income Security Act of 1974, as amended.

The term **Employee** does not include any agent, broker, commission merchant or

independent contractor of the **Insured**.

J.    **"Employee Forgery"** means **Forgery** or alteration by an **Employee** of any checks, drafts, promissory notes or similar written promises, orders or directions to pay a sum certain in **Money,** that are:

1.    made or drawn by or drawn upon the **Insured** or that are purported to have been so made or drawn; or

2.    made or drawn by one acting as the **Insured's** agent or that are purported to have been so made or drawn.

**"Employee Forgery"** includes **Forgery** or alteration by an **Employee** of, on or in, any written instrument required in connection with any credit, debit or access card issued to the **Insured** or at the request of the **Insured**, to any **Employee** of the **Insured**.

K.    **"Employee Theft"** means the unlawful taking of **Money, Securities** or **Property** to the deprivation of an **Insured** by an **Employee**, whether identified or not, acting alone or in collusion with others.

L.    **"Executive Shareholder"** means any **Employee**, director, trustee, officer, administrator, manager, partner, or shareholder of the **Insured** that has a 25% or greater ownership interest in the **Insured** or any other person or entity that has a 25% or greater ownership interest in the **Insured**.

M.    **"Expenses"** means reasonable expenses, other than an **Insured's** internal corporate costs (such as **Employee** remuneration or **Employee** expenses), incurred by an **Insured** with the Insurer's prior written consent to:

1.    establish the existence and amount of a covered loss in excess of the Deductible;

2.    reproduce **Data**; or

3.    repair or replace to a substantially similar standard any safe or vault damaged as a result of **Robbery** or **Safe Burglary**.

With respect to **Forgery** coverage under Insuring Clause I.B., **Expenses** also means reasonable attorney fees, court costs and legal expenses incurred and paid with the Insurer's prior written consent by the **Insured** in defending the **Insured** in any legal proceeding to enforce payment of checks, drafts or similar written promises, orders or directions to pay a sum of certain money that are made, drawn by or drawn upon an **Insured** or by anyone acting as an **Insured's** agent or that are purported to have been so made or drawn upon.

With respect to **Credit Card Fraud** coverage under Insuring Clause I.H., **Expenses** also

means reasonable attorney fees, court costs and legal expenses incurred and paid with the Insurer's prior written consent in defending an **Insured** in any legal proceeding brought against it to enforce payment of a written instrument in connection with a credit card.

N.   **"Financial Institution"** means:

    1.   a bank, credit union, saving and loan association, trust company or other licensed financial service where the **Insured** maintains a **Transfer Account**; or

    2.   a securities broker-dealer, mutual fund, liquid assets fund or similar investment company where the **Insured** maintains a **Transfer Account**.

O.   **"Forgery"** means the signing of another natural person or entity's name with intent to deceive, but does not mean a signature that includes one's own name, with or without authority, in any capacity for any purpose. Mechanically or electronically produced or reproduced signatures shall be treated the same as hand-written signatures.

P.   **"Funds Transfer Fraud"** means fraudulent written, electronic, telegraphic, cable, teletype or telephone instructions by a **Third Party** issued to a **Financial Institution** directing such institution to transfer, pay or deliver **Money** or **Securities** from any account maintained by an **Insured** at such institution, without the **Insured's** knowledge or consent.

Q.   **"Insured(s)"** means the entity designated in Item 1. of the Declarations and/or any additional **Insureds** listed therein and any **Subsidiary**.

R.   **"Merchandise"** means the **Insured's** inventory, raw materials, work in progress and manufactured or distributed products.

S.   **"Messenger"** means any **Insured** or **Employee** duly authorized by the **Insured** to have care and custody of **Money**, **Securities** or the **Insured's Property** outside the **Premises**.

T.   **"Money"** means:

    1.   currency, coins or bank notes in current use and having a face value; and

    2.   traveler's checks, register checks or money orders held for sale to the public.

U.   **"Plan"** means any Employee Welfare or Pension Benefit Plan, as defined in Title I of the Employee Retirement Income Security Act of 1974 and any amendments thereto (collectively "ERISA") which is or becomes solely sponsored by the **Insured**.

V.   **"Policy Period"** means the period from the effective date and time of this Policy to the Policy expiration date and time as set forth in Item 2. of the Declarations or its earlier cancellation or termination, if any, pursuant to Clause VI. D. of this Policy.

W.   **"Premises"** means the interior portion of any building occupied by the **Insured** in conducting its business.

X.   **"Property"** means tangible property other than **Money** or **Securities** that has intrinsic value but does not include any property excluded under this Policy.

Y.   **"Robbery"** means the unlawful taking of **Money, Securities** or **Property** from the custody of an **Employee** or other person authorized by an **Insured** to act as custodian of such **Money, Securities** or **Property**, except a person acting as a watchman, porter or janitor, by violence or threat of violence, committed in the presence and cognizance of such person.

Z.   **"Safe Burglary"** means the unlawful taking of **Money, Securities** or **Property** by forcible or violent entry, evidenced by visible marks, from a locked vault or safe located within the **Premises**.

AA.   **"Securities"** means negotiable and non-negotiable instruments or contracts representing either **Money** or **Property** and includes:

1.   tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

2.   evidences of debt issued in connection with credit or charge cards, which cards are not issued by the **Insured**,

but does not include **Money**.

BB.   **"Subsidiary"** means any entity, while more than 50% of the outstanding voting securities representing the present right to vote for the election of such entity's directors or the right to elect or otherwise designate more than 50% of such entity's managers is owned or controlled by the **Insured** directly or indirectly, if such entity:

1.   was so owned prior to the inception date of this Policy and was insured under a policy issued by the Insurer of which this Policy is a renewal;

2.   was so owned on the inception date of this Policy;

3.   becomes so owned after the inception date of this Policy pursuant to Clause VII.B.1.

CC.   **"Theft"** means any act of stealing.

DD.   **"Third Party"** means any person or entity other than an **Insured, Employee** or **Executive Shareholder**.

Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

EE.   **"Transfer Account"** means an account maintained by the **Insured** at a **Financial Institution** from which the **Insured** can initiate the transfer, payment or delivery of **Money** or **Securities**.

## III.   EXCLUSIONS

A.   The Insurer shall not be liable under any Insuring Clause for loss or damage sustained by any **Insured** resulting directly or indirectly from:

1.   any fraudulent, dishonest or criminal act or omission by any **Insured** or any **Executive Shareholder** thereof whether acting alone or in collusion with others;

2.   any fraudulent, dishonest or criminal act or omission by any **Employee**:

   (a)   whether acting alone or in collusion with any other person or entity; or

   (b)   while performing services for the **Insured** or otherwise;

   except when covered under Insuring Clause I.A., I.G. or I.I.

3.   nuclear reaction, nuclear radiation, radioactive contamination or any related act or incident;

4.   damage to the **Premises** resulting from fire, however caused;

5.   damage to **Money, Securities** or **Property** while in the care and custody of an armored motor vehicle company; however this exclusion shall not apply in the event the **Insured** cannot recover the amount of loss:

   (a)   under the **Insured's** contract with such armored motor vehicle company; or

   (b)   from any insurance or indemnity carried by or for the benefit of customers of, the armored motor vehicle company;

6.   salary, commissions, fees or other emoluments, including but not limited to promotions and raises associated with employment, properly or improperly paid by the **Insured** to an **Employee**;

7.   the authorized or unauthorized trading of **Money, Securities** or **Property**, whether or not in the name of the **Insured** and whether or not in a genuine or fictitious account; provided however, that this exclusion does not apply to direct losses caused by **Employee Theft** that results in improper financial gain to such **Employee**; provided further that salary, commissions, fees or other emoluments, including but not limited to promotions and raises associated with employment, paid

by the **Insured** to such **Employee**, shall not constitute improper financial gain;

8.  loss of trade secrets, confidential processing methods, confidential information, patents, copyrights, trademarks or intangible or intellectual property of any kind;

9.  loss to or damage to the **Premises**, except as covered under Insuring Clause I.C.;

10. loss to or damage to any property, safe, vault, or to the **Premises** or its exterior, by vandalism or malicious mischief.

11. based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving any failure or omission on the part of the **Insured** to obtain or maintain adequate insurance;

12. accounting or arithmetical errors or omissions;

13. income not realized as the result of a covered loss;

14. indirect or consequential loss of any kind except for covered **Expenses** under Insuring Clause I.I.;

15. punitive, exemplary or multiplied damages of any kind;

16. matters deemed uninsurable under the law pursuant to which this Policy shall be construed;

17. taxes, loss of tax benefits, or fines or penalties imposed by law;

18. the **Insured** knowingly having given or surrendered **Money, Securities** or **Property** in any exchange or purchase with a **Third Party**, not in collusion with an **Employee**; provided that this Exclusion shall not apply to loss under Insuring Clause I.E;

19. fees, costs or expenses incurred or paid by an **Insured** in defending or prosecuting any legal proceeding or claim, provided that this Exclusion shall not apply to the coverage provided under Insuring Clause I.I.;

20. loss caused by an **Employee** which is **Discovered** after a director, trustee, officer, administrator, manager, partner or **Executive Shareholder** of the **Insured** acquires at any time knowledge of:

    (a) **Employee Theft** while such **Employee** is employed with an **Insured**; or

    (b) fraud or dishonesty involving **Money, Securities** or **Property** valued at $25,000 or more committed by such **Employee** prior to his or her employment with an **Insured**;

27-CV-18-16565

CASE 0:18-cv-02964-DWF-DTS   Document 1-1   Filed 10/19/18   Page 113 of 122   Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

21.   **Expenses** incurred:

(a)   as a result of the reconstitution of **Data** recorded on magnetic or optical media if there are no analysis files, specifications, nor backups of software or **Data** held outside the **Premises**;

(b)   as a result of the reconstitution of **Data** if an **Insured** knowingly uses illegal copies of programs;

(c)   to render the **Data** usable by replacement processing equipment;

(d)   to design, update or improve software or programs or to perfect their operation or performance;

(e)   as a result of an alteration in **Data** held on magnetic media due to the effect of magnetic fields, their incorrect use or the obsolescence of the **Computer System**; or

(f)   by a customer of an **Insured** to whom an **Insured** provides goods or services under written contract or for a fee; or

22.   a kidnap, ransom or other extortion payment surrendered to any person as a result of a threat to do bodily harm to any person or a threat to do damage to any property.

B.   The Insurer shall not be liable under Insuring Clause I.A., I.G. or I.I. for loss or damage sustained by any **Insured** caused directly or indirectly by:

1.   any agent, broker, factor, commission merchant, consignee, contractor, independent contractor, subcontractor, or similar person or entity; or

2.   any **Employee** acting alone or in collusion with any other employee more than 30 days following the termination of such **Employee**.

C.   The Insurer shall not be liable under Insuring Clause I.C., I.D. or I.I. for loss or damage sustained by any **Insured** resulting directly or indirectly from:

1.   **Forgery, Computer Fraud, Funds Transfer Fraud, Money Orders and Counterfeit Paper Currency Fraud** or **Credit Card Fraud**; or

2.   loss of or damage to **Money, Securities** or **Property** while in the mail or in the custody of a carrier for hire other than an armored motor vehicle company.

D.   The Insurer shall not be liable under Insuring Clause I.F. or I.I. for direct or indirect loss or damage sustained by any **Insured** more than 60 days after any **Insured** becomes aware

Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

of a **Computer Fraud** or other fraudulent, dishonest or criminal act committed by a **Third Party**.

E.   The Insurer shall not be liable under Insuring Clause I.H. or I.I. for loss or damage sustained by any **Insured** resulting directly or indirectly from **Forgery** or alteration of, on or in any written instrument; provided that this Exclusion shall not apply if:

   1.   the terms and conditions under which the credit, debit or access card was issued were fully complied with; and

   2.   an **Insured** is legally liable to the issuer of such credit, debit or access card for such loss.

F.   Subject to Clause VI. D of this Policy, no coverage will be available under this Policy for loss or damage unless sustained through acts committed during the **Policy Period** and:

   1.   **Discovered** during the **Policy Period**; or

   2.   **Discovered** during the discovery period described in Clause IV. D. of this Policy.

In no event will coverage be available under this Policy for such loss if such loss is covered under any renewal or replacement of this Policy in whole or in part.


**IV.   LIMITS OF LIABILITY, NON-ACCUMULATION OF LIABILITY, DEDUCTIBLE, DISCOVERY PERIOD**

   **A.   Limits of Liability**

   The Insurer's maximum limit of liability for each loss shall be the Limits of Liability for each Insuring Clause I.A. through I.H. as set forth in Item 3. in the Declarations.  The payment of loss under one Insuring Clause shall not reduce the Limit of Liability available for the other Insuring Clauses.

   A loss resulting from a single act or any number of acts in which the same **Employee** or **Third Party** is concerned or implicated, whether such act or acts occurred before or during the **Policy Period**, will be treated as a single loss hereunder.

   If a loss is covered under more than one Insuring Clause, the maximum amount payable under this Policy shall not exceed the largest single applicable Limit of Liability of such Insuring Clauses as provided in Item 3. of the Declarations.

   The Insurer's maximum aggregate limit of liability for all **Expenses** incurred during the **Policy Period** shall be the Limit of Liability applicable to Clause I.I. as set forth in Item 3. of

the Declarations.

**B.    Non-Accumulation of Liability**

When there is more than one **Insured** involved in a loss, the maximum liability of the Insurer for loss sustained by one or all such **Insureds** shall not exceed the amount for which the Insurer would be liable if all losses were sustained by any one of the **Insureds**.

Regardless of the number of years this coverage remains in effect and the total premium amounts due or paid, the amount the Insurer shall pay for a loss shall not be cumulative from year to year or from one **Policy Period** to another policy period.

**C.    Deductible**

The Insurer shall pay loss that exceeds the amount of recoveries made prior to such payment, less the applicable Deductible set forth in the Item 4. of the Declarations.

If an **Insured** receives payment under another Policy or bond which was issued to the **Insured**, after applying a deductible, for loss also covered hereunder, then the Deductible set forth in Item 4 of the Declarations shall be reduced by the deductible previously applied to such loss.

**D.    Discovery**

Subject to Clause VI. D. of this Policy, this Policy only applies to loss which is sustained during the **Policy Period**.

**Loss** is covered under this Policy only if **Discovered** no later than 60 days from the end of the **Policy Period** (such 60 day period is the "discovery period").  At any time prior to the termination of this Policy, the **Insured** may give written notice to the Insurer requesting an extension of the discovery period for loss under this Policy to 12 months from the end of the **Policy Period** and shall pay an additional premium to be determined by the Insurer in its sole discretion.  The discovery period terminates immediately upon the inception date of any other insurance obtained by the **Insured** replacing in whole or in part the insurance afforded hereunder whether or not such other insurance provides coverage for loss sustained prior to its effective date.  There shall be no coverage under this Policy for loss sustained during the discovery period or extended discovery period.  In all events, the 12 month extension will not be available if this Policy is cancelled as provided in Clause VI. D. 2. (c).

**V.    NOTICES, PROOF OF LOSS AND LEGAL PROCEEDINGS**

It is a condition precedent to coverage hereunder that, upon **Discovery** of loss or an occurrence which may result in a covered loss, the first named **Insured** shall comply with A., B. and C. below.

A.   The first named **Insured** shall give written notice to the Insurer at the earliest practicable moment and in any event within the earliest of:

1.   90 days of **Discovery**; or

2.   90 days following termination of the Policy.

Such notice to the Insurer shall be given to the firm shown in Item 6. of the Declarations at the address set forth therein.

B.   The first named **Insured** shall furnish a sworn proof of loss with full particulars to The Insurer within 6 months of **Discovery** and shall thereafter:

1.   submit to examination under oath at the Insurer's request;

2.   produce all pertinent records at such reasonable times and places as the Insurer shall designate;

3.   fully cooperate with the Insurer or their counsel in all matters pertaining to a loss or claim; and

4.   not take any action which in any way increases the Insurer's exposure under this Policy.

C.   The first named **Insured** may offer a comparison between an **Insured's** inventory records and actual physical count of its inventory to prove the amount of loss, but only where the **Insured** establishes wholly apart from such comparison that it has sustained a covered loss.

## VI.   GENERAL CONDITIONS

### A.   Reliance Upon and Incorporation of Application

In issuing this Policy, the Insurer has relied upon the statements made in the written Application for this Policy and all information provided to the Insurer.  All such statements are the basis of this Policy and shall be incorporated in and constitute part of this Policy.

### B.   Transactions That Impact Coverage

If an **Insured** consolidates or merges with, acquires majority voting rights in or acquires the assets of another entity which results in an increase of the **Insured's** total revenues by more than 25 percent, coverage is provided to such entity if an **Insured**:

1.   gives the Insurer written notice within 90 days from the date of such consolidation,

merger or acquisition; and

2.     pays the Insurer any additional premium required by the Insurer.

Coverage hereunder shall be afforded for loss which is sustained on or after the effective date of the transaction.

### C.     Termination, Cancellation and Nonrenewal

1.     This Policy shall terminate as to any **Employee** as soon as any **Insured** or any director, trustee, officer, administrator, manager or partner of the **Insured** not in collusion with the **Employee** acquires knowledge of:

   (a)     any unlawful taking of **Money, Securities** or **Property**, or other fraudulent or dishonest act committed by such **Employee** during any term of employment with an **Insured**; or

   (b)     any fraudulent or dishonest act involving **Money, Securities** or **Property** exceeding $25,000 committed by such **Employee** prior to any term of employment with an **Insured**.

2.     This Policy shall terminate in its entirety upon occurrence of any of the following:

   (a)     10 days after the mailing of written notice to the **Insured** from the Insurer in the event of nonpayment of premium; or

   (b)     30 days after the mailing of written notice to the **Insured** from the Insurer for any other reason

3.     The notice of cancellation from the Insurer shall state the reason for cancellation. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice shall be equivalent to mailing.

4.     This Policy may be cancelled by the **Insured** by mailing or delivering to the Insurer advance written notice of cancellation. The mailing or delivery of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period.

5.     If this Policy is cancelled, the Insurer shall send the **Insured** any premium refund as soon as practicable.  If the **Insured** cancels, the refund shall be on the customary short rate basis.  The return or tender of a return premium is not a condition precedent to the cancellation becoming effective at the time stated in the cancellation notice.

6.     If the Insurer decides not to renew this Policy, the Insurer shall provide written notice to the **Insured** designated in Item 1. of the Declarations at least 60 days

before the end of the Policy Period. The notice of nonrenewal shall state the reason for nonrenewal.

**D.    Liability for Prior Losses**

If the **Insured** or its predecessor in interest, sustained loss during the policy period of any prior insurance policy that was substantially similar to this Policy and could have recovered under that insurance policy except that the time within which to discover loss had expired, the Insurer will pay for it under this Policy provided:

1.    This insurance became effective at the time of cancellation or termination of the prior insurance or insurance subsequent thereto without any interruption in coverage;

2.    The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred; and

3.    The loss is **Discovered** during the **Policy Period**; or during the discovery period described in Clause IV. D. of this Policy.

In no event will coverage be available under this Policy for such loss if such loss is covered under any renewal or replacement of this Policy in whole or in part.

Any coverage provided pursuant to this paragraph VI. E. is part of and not in addition to the Limits of Liability applicable to this Policy and the Insurer's liability shall not exceed the limit of liability under the policy in force at the time such loss was sustained or the applicable Limit of Liability in the Declarations, whichever is less.

In the event that a loss is covered under this Policy and another policy, it is hereby agreed that the applicable Insuring Clause deductible for this Policy shall be reduced by the applicable deductible of the other policy.

**E.    First Named Insured's Rights and Obligations**

By acceptance of this Policy, the **Insured** agrees that the first named **Insured** shall act on behalf of all **Insureds** with respect to:

1.    the filing of notice or proof of loss in accordance with Clause V.;

2.    the filing of a claim, adjustment of the amount of loss, receipt or enforcement of payment of a loss;

3.    the payment of premium for, the acceptance of amendments to, or termination of, this Policy; and

27-CV-18-16565

CASE 0:18-cv-02964-DWF-DTS   Document 1-1   Filed 10/19/18   Page 119 of 122   Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

    4.    the return of any premiums by the Insurer to the **Insured**.

**F.**    **Other Insurance**

This Policy shall be specifically excess of any other existing valid insurance policy, bond or indemnity that applies to loss also covered hereunder, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise and regardless of whether or not any loss is collectible or recoverable under such other policy, bond or indemnity; provided, however, this provision shall not apply to loss in excess of any deductible and limit of liability of such other policy where the loss is otherwise covered by this Policy.

**G.**    **Ownership of Property; Interests Covered**

This Policy covers only **Money**, **Securities** or **Property**:

    1.    that the **Insured** owns or leases;

    2.    that the **Insured** holds for others;

    3.    for which the **Insured** is legally liable; or

    4.    under Insuring Clause I.G. only;

        (a)    that a **Client** owns or leases;

        (b)    that a **Client** holds for others; or

        (c)    for which a **Client** is legally liable

while the **Money**, **Securities** or **Property** is inside the interior of that portion of any building the **Client** occupies in conducting its business.

However, this Policy is for the **Insured**'s benefit only. It provides no rights or benefits to any other person or entity. Any claim for loss that is covered under this Policy must be presented by the **Insured.**

**H.**    **Territory**

This Policy shall apply to loss of the **Insured** occurring anywhere in the world.

**I.**    **Valuation and Currency**

In the event of a covered loss of **Money**, **Securities** or **Property**, the Insurer shall pay,

subject to Clause IV. of this Policy:

1.   the least of:

(a)   the face value of **Money**; or

(b)   the United States dollar value of foreign currency based on the rate of exchange published in *The Wall Street Journal* on the day loss involving foreign currency is **Discovered**.

2.   the least of:

(a)   the closing price of **Securities** on the business day immediately preceding the day on which a loss is **Discovered**; or

(b)   the cost of replacing **Securities**; or

(c)   the cost to post a Lost Instrument Bond.

3.   the cost of blank materials, such as blank books, pages or tapes;

4.   the least of:

(a)   the price paid by an **Insured** for the **Property**;

(b)   cash value of the **Property** at the time the loss was sustained; or

(c)   the cost to repair or replace the **Property** with that of similar quality and value at the time an **Insured** complies with Clause V., Notices, Proof of Loss and Legal Proceedings, regarding the furnishing of proof of loss.

**J.    Recoveries**

Recoveries, whether effected by the Insurer or by the **Insured**, less the cost of recovery, shall be distributed as follows:

1.   first, to the **Insured** for the amount of loss otherwise covered but in excess of the Limits of Liability;

2.   second, to the Insurer for the amount paid to the **Insured** for covered loss;

3.   third, to the **Insured** for the Deductible; and

4.   fourth, to the **Insured** for loss specifically excluded hereunder.

Recovery from reinsurance or indemnity of the Insurer shall not be deemed a recovery

Filed in District Court
State of Minnesota
10/2/2018 2:27 PM

hereunder.

**K.**    **Subrogation**

In the event of any payment under this Policy, the Insurer shall be subrogated to the extent of such payment to the **Insured's** rights of recovery and the **Insured** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of the **Insured**.

**L.**    **No Action Against the Insurer**

No action shall lie against the Insurer unless, as a condition precedent thereto, there has been full compliance with all the terms of this Policy.  No person or entity shall have any right under this Policy to join the Insurer as a party to any action against the **Insured** to determine the **Insured's** liability, nor shall the Insurer be impleaded by the **Insured** or their legal representatives.

**M.**    **Entire Agreement; Alteration and Assignment of Interest**

The **Insured** agrees that this Policy, including the Declarations, constitutes the entire agreement between the **Insured** and the Insurer or any of their agents or brokers.  No change in, modification of, or assignment of interest under this Policy shall be effective except when made by a written endorsement to this Policy which is issued by the Insurer. Notice to or knowledge possessed by the Insurer, the **Insured** or any agent, broker or other person acting on behalf of the **Insured** or the Insurer shall not effect a waiver of or stop the Insurer from asserting any rights under this Policy.

**N.**    **Concealment, Misrepresentation or Fraud**

This Policy is void in any case of fraud by the **Insured** as it related to this Policy at any time.  It is also void if the **Insured**, at any time, in the Application or otherwise, intentionally conceals or misrepresents a material fact concerning:

1.    this Policy;

2.    any **Money**, **Securities** or **Property** covered under this Policy;

3.    the **Insured's** interest in any **Money**, **Securities** or **Property** covered under this Policy; or

4.    any claim under this Policy.

**O.**    **Employee Benefit Plan Provisions**

In compliance with certain provisions of ERISA:

1. If any **Plan** is insured jointly with any other entity under this insurance, the **Insured** or the **Plan** Administrator must select a limit of liability under Insuring Clause I.A. that is sufficient to provide an amount of insurance for each **Plan** that is at least equal to that required if each **Plan** was separately insured.

2. If the **Insured** first named in the Declarations is an entity other than a **Plan**, any payment the Insurer makes to that **Insured** for loss sustained by any **Plan** will be held by that **Insured** for the use and benefit of the **Plan(s)** sustaining the loss.

3. If two or more **Plans** are insured under this insurance, any payment the Insurer makes for loss:

    (a) sustained by two or more plans; or

    (b) of commingled funds or other property of two or more **Plans**;

    is to be shared by each **Plan** sustaining loss in the proportion that the amount of insurance required for each such **Plan** under ERISA provisions bears to the total of those amounts.

4. The Deductible applicable to Insuring Clause I.A. does not apply to loss sustained by any **Plan** subject to ERISA which is insured under this insurance.

**P. Records**

The **Insured** must keep records of all **Money, Securities** or **Property** covered under this Policy so the Insurer can verify the amount of any loss.

**Q. Examination of the Insured's Books and Records**

The Insurer may examine and audit the **Insured's** books and records as they relate to this Policy at any time during the **Policy Period** and up to 3 years afterward.

**R. Headings**

The descriptions in the headings and sub-headings of this Policy are solely for convenience and form no part of the terms and conditions of coverage.